## CASEY v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   June 19, 1922.   Rehearing Denied
September 11, 1922.)

No. 5996.

Criminal law ⬖⇒394—Evidence held not obtained through unlawful search.

Evidence obtained by deputy revenue collectors, by visiting defendant's drug store while open in the daytime and obtaining a bottle of a beverage which was being openly sold over the counter, and which proved to have a large alcohol content, *held* not inadmissible on trial of defendant for carrying on the business of retail liquor dealer without having paid the special tax, on the ground that it was obtained by an unlawful search, in violation of Const. Amend. 4.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Criminal prosecution by the United States against Don J. Casey. Judgment of conviction, and defendant brings error.   Affirmed.

Allyn Smith, of Cotter, Ark. (Mitchell & Williams, of Harrison, Ark., and Henry D. Green, on the brief), for plaintiff in error.

S. S. Langley, U. S. Atty., and W. H. Dunblazier, Asst. U. S. Atty., both of Ft. Smith, Ark.

A. C. Seawell, amicus curiæ.

Before LEWIS and KENYON, Circuit Judges, and JOHNSON, District Judge.

KENYON, Circuit Judge.   Plaintiff in error was indicted in the District Court of the United States for the Western District of Arkansas, July 7, 1920.   There are two counts in the indictment.   The first count charges the offense of unlawfully and feloniously carrying on the business of a retail liquor dealer without having paid the special tax therefor, as required by law.   The second count charges him with unlawfully and feloniously emptying and drawing off distilled spirits from 29 packages bearing the United States internal revenue stamps, and that he did not efface and obliterate said stamps as required by law.

There were two trials of the case.   At the first trial, October 15 and 16, 1920, the jury disagreed.   At the second trial, October 12, 1921, the plaintiff in error was found guilty on the first count of the indictment, and was acquitted on the second count.   Counsel for plaintiff in error filed at the proper time in the trial court a motion to suppress evidence of certain witnesses, alleging said evidence was procured in violation of the Fourth Amendment to the Constitution.   Another question as to repeal of the law under which the first count of the indictment was found, by passage of the so-called Volstead Act (41 Stat. 305), was raised by demurrer.   As the offense charged was before the taking effect of the Volstead Act, this question was abandoned and not urged, and counsel for plaintiff in error frankly stated in his oral argument to this court that the only question involved in

the case is the one of evidence procured in alleged violation of the Fourth Amendment to the Constitution. We therefore confine ourselves to this proposition.

It is apparent from the record that the motion to suppress evidence at the time of the first trial was as to the second count of the indictment only. It is not clear as to the second trial whether the motion goes to the entire indictment, or to the second count alone. The question raised in the case, however, is so important that we construe the doubt as to procedure in favor of plaintiff in error's contention, treating it as here for determination.

Was any part of the evidence used against plaintiff in error in the trial secured by an unreasonable search and seizure in violation of the Fourth Amendment to the Constitution? The Fourth Amendment is designed to protect the American citizen from the abuse of unreasonable search as to his person, his home, and other property. It is closely related to the Fifth Amendment, and these two amendments are part of a great constitutional plan for safeguarding the rights of citizens. Any tendency to impair these amendments, any attempts to weaken their force, to detract from their purpose either openly or insidiously, should be promptly checked. No one can mistake the emphatic language of the Supreme Court of the United States on this subject. Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319. In the comparatively late case of Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, the question is discussed by the Supreme Court, and it might be instructive to quote therefrom:

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in Boyd v. United States, 116 U. S. 616, in Weeks v. United States, 232 U. S. 383, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is: That such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property'; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen—the right to trial by jury, to the writ of habeas corpus, and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts, or by well-intentioned, but mistakenly overzealous, executive officers. * * *

"The prohibition of the Fourth Amendment is against all unreasonable searches and seizures and if for a government officer to obtain entrance to a man's house or office by force or by an illegal threat or show of force, amounting to coercion, and then to search for and seize his private papers would be an unreasonable and therefore a prohibited search and seizure, as it certainly would be, it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth, instead of by force or coercion. The security and privacy of the home or office and of the papers of the owner would be as much invaded and the search and seizure would be as much against his will in the one case as in the other, and it must therefore be regarded as equally in violation of his constitutional rights.

"Without discussing them, we cannot doubt that such decisions as there are in conflict with this conclusion are unsound, and that, whether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch or subdivision of the government of the United States by stealth, or through social acquaintance, or in the guise of a business call, and whether the owner be present or not when he enters, any search and seizure, subsequently and secretly made in his absence, falls within the scope of the prohibition of the Fourth Amendment, and therefore the answer to the first question must be in the affirmative."

The language of this decision should be notice to any who clothed with a little brief authority may imagine the power is lodged in them to decide whether these amendments are important enough to be recognized, and the language of the Gouled Case is reassuring to those American citizens who feel there has been somewhat of a tendency to underrate the force and effect of these amendments.

In the case before us we would not hesitate to enter an order of reversal if, from the record, we could find anything to sustain the theory of plaintiff in error that evidence used against him was secured by an unreasonable search and seizure. What are the facts? The government agents were deputy collectors of internal revenue. They were proceeding under section 3177, Revised Statutes of the United States (Comp. St. § 5900), which is as follows:

"Any collector, deputy collector, or inspector may enter, in the daytime, any building or place where any articles or objects subject to tax are made, produced, or kept, within his district, so far as it may be necessary, for the purpose of examining said articles or objects. * * * And when such premises are open at night, such officers may enter them while so open, in the performance of their official duties."

Plaintiff in error was conducting a drug store. It was a public place. The government agents complained of were there in the day time. There is no showing in the evidence that any search whatever was made by them. The record shows that from the cold drink stand in the drug store an employee of plaintiff in error openly, and without any attempt at concealment, was selling grape juice or wine, and that the same was intoxicating. As the procedure was continuing day by day, the record showing that young men and boys drank the grape juice or wine and became intoxicated, it required no search to ascertain that such grape juice or wine was at the drug store and being freely sold.

On December 10, 1919, Barkman, Garner, and Overton, deputy revenue collectors of the government, went to the store in the daytime in the absence of plaintiff in error to ascertain whether or not plaintiff in error was conducting a retail liquor business without having paid the special tax as required by law. On the following day the same government agents returned and procured a bottle of the liquid under suspicion, which was analyzed by witnesses Roark and Manning, who testified that it contained 24 per cent. of alcohol by volume. This evidence was admitted without objection. These transactions, claimed by plaintiff in error to constitute unreasonable search and seizure, took place December 10 and 11, 1919. We fail to see anything in this to show any search whatever, and especially an unreasonable search or seizure. Plaintiff in error, it is true, testified that in his absence from

the store, on the 10th day of December, 1919, the revenue officers visited his store and made a search. That is a mere statement of conclusion, and the record shows what was done.

Count 1 of the indictment, under which conviction was had, charges that on the 24th day of November, 1919, plaintiff in error was conducting the business of a retail liquor dealer without having paid the special tax provided by law. The alleged unreasonable search was in December, 1919. Plaintiff in error admits that on or about the date stated in the indictment the boys and young men at the school at Mountain Home, Ark., purchased in his store what he supposed was grape juice. In the bill of exceptions it is stated that this was intoxicating. On the trial the question was submitted to the jury whether or not plaintiff in error knew of the intoxicating character of said liquor so sold.

If the evidence secured by the government agents had not been used at all in the case, there would have been sufficient to have warranted a conviction on the question of unlawfully carrying on the business of a retail liquor dealer without payment of special tax, on the 24th day of November, 1919. The price charged for grape juice, 25 cents per glass, the intoxication of the young men and boys of the Mountain Home School as a result of drinking the same, and all the other circumstances, show that plaintiff in error must have known that he and his agent were selling something stronger than grape juice, and that the same was intoxicating. The evidence of Barkman and Garner, which plaintiff in error condemns as based on a violation of the Constitution, was not necessary to convict. We do not base our decision, however, on that point, as we are satisfied there was no unreasonable search and seizure. Under the plain facts of this case the Constitution cannot be successfully invoked to shield plaintiff in error from his palpable violation of the law. His rights were fully protected, and the evidence amply justifies the conviction.

The judgment of the trial court is affirmed.