Marshall, C. J.
These cases, seventeen in number, were filed in this court as of right, on the ground that they present questions arising under the constitutions, state and federal, on error from the court of appeals of Montgomery county. All of them were originally tried before the municipal court of the city of Dayton. Only two of the cases were argued in this court, but there was an agreement that the same judgment should properly be rendered in each and all the cases. Notwithstanding this agreement we have carefully examined the records and bills of exceptions in each and every case.
The cases are not in fact similar in all respects and it is found that different legal questions are involved in different cases.
In the majority of the cases search warrants had been issued, but in other cases search was made without a search warrant having been issued; and in every case a petition was filed asking for the return of the property seized, and in each case the petition for return was filed before trial upon the affidavits.
In one of these cases, No. 17542, the case of Supensky, the goods were ordered returned and the ease thereafter proceeded upon other evidence. In *445 all of the other eases the petition for return was denied.
In some of these cases the questions argued in this court relate to the regularity of the search and the right to make a search and to seize goods by virtue of a warrant which had been issued by a clerk of a municipal court without any action on the part of the court, or any judge thereof, and without a preliminary hearing or introduction of any evidence other than the affidavit itself as the basis for issuing the search warrant.
It should be stated, however, that in four of the cases, to-wit, No. 17532, Stravinsky v. State of Ohio, No. 17533, Asztalos v. State of Ohio, No. 17535, Nagy v. Statel of Ohio, and No. 17541, Meres v. State of Ohio, there was a preliminary finding made by the chief justice of the court in the following language : “An affidavit having been filed herein setting forth that certain intoxicating liquors and still used in connection therewith are now unlawfully concealed in the place and by the person named in said affidavit and contrary to the laws of this state relating to intoxicating liquors, as are more particularly set forth in said affidavit, and this matter coming on for hearing upon such affidavit and the evidence adduced in support thereof the court finds that there is good cause to believe the facts set forth therein to be true and that a search warrant issue in conformity with the allegations of said affidavit.”
In No. 17545, the case of Madasky v. State of Ohio, counsel for the accused made a statement at the time of the hearing in open court as follows: “Upon the affidavit being filed the court ordered the clerk to issue the warrant.” It therefore appearing *446 that the court made the order, it will be presumed that the order was made upon evidence properly introduced.
As to those five cases, therefore, the records show .that the proceedings were in fact sufficient even when measured by the claims of counsel for plaintiffs in error.
We have carefully examined all of the other bills of exceptions to determine whether or not there was any other competent evidence upon which the judgment of the trial court could rest and which would support the convictions, in addition to the exhibits which the court refused to order returned.
Without stating at length the testimony in the numerous cases, it is sufficient to say that there is in each instance abundant evidence of a competent nature to support the conviction. In some instances stills were found in operation and the defendants in charge thereof. In other instances stills and other appliances for manufacturing intoxicating liquors, not in operation, were found, but the officers also found large quantities of mash and small quantities of whiskey. In other instances the defendants being found in possession of liquors and other contraband property frankly made admissions to the officers, which were testified to.
The judgments in all these cases could properly be affirmed by this court for the reasons already stated, but; inasmuch as the other questions have been seriously argued, and the pronouncements of this court have not been very definite upon those questions, it is deemed proper to discuss the question of the regularity of the search.
*447 It is contended by counsel for plaintiffs in error that tbe procedure followed in eleven of these eases violates the provisions of Section 14, Article I, the Ohio Bill of Rights, which reads as follows: “The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized.”
In each instance the affidavit filed as the basis for the search warrant alleged the commission of an offense against the Crabbe act, and described the building particularly, stating its location and that the same was not a bona fide private residence. The affidavits contained the further allegation: ‘ ‘ The affiant aforesaid says that he has good reason to believe and does believe that said intoxicating liquors are still now concealed and certain facilities, equipment, implements and furniture are still now kept at the place aforesaid and for the purpose aforesaid. ’ ’
Acting upon this affidavit the clerk of the municipal court, in eleven of the cases, issued the search warrant without any action whatever on the part of the judge.
Section 6212-16, General Code, in part provides as follows: “A search warrant may issue, and proceedings had thereunder, as provided in Sections 13482 to 13488 inclusive of the General Code so far as the same may apply, and such liquor, the containers thereof, and such property so seized shall be *448 subject to such disposition as the court may make thereof.”
We must therefore turn to the older provisions of the code referred to for the procedure in issuing and executing a search warrant. ' Section 13483, General Code, provides: “A warrant for search shall not be issued until there is filed with the magistrate an affidavit particularly describing the house or place to be searched, the person to be seized, and the things to be searched for, and alleging substantially the offense in relation thereto, and that affiant believes, and has good cause to believe, that such things are there concealed.”
It will be seen from what has already been stated that the affidavits on file were in substantial compliance with that section.
It will further be seen that that section makes no requirement that there be a preliminary hearing or that other evidence in support of the affidavit be offered, or that there be a preliminary finding by the magistrate of probable cause, but it is sufficient if an affidavit be filed containing the necessary allegations as to the offense committed, the description of the property and affiant’s good faith in invoking the process of the court.
It is the purpose of a search warrant to search houses or other places for stolen property, or contraband goods, for the purpose of ferreting out crime, and surely it cannot be claimed that a person’s house or other property is any more sacred in the eye of the law than a person’s liberty. The provisions of Section 14 of the Bill of Rights, above quoted, have the same application to warrants for arrest as they have to warrants for search. It will *449 therefore he interesting to compare the provisions of Section 13483, relating to search warrants, with the provisions of Section 13496, relating to a warrant for arrest. The latter section reads as follows: “When an affidavit charging a person with the commission of an offense is filed with a justice of the peace, mayor or police judge, if he has reasonable ground to believe that the offense charged has been committed, he shall issue a warrant for the arrest of the accused.”
It will be seen, therefore, that this section requires that the magistrate shall have reasonable ground to believe that an offense has been committed, while in the matter of a search warrant it is only necessary that there be filed with the magistrate the affidavit of any citizen alleging that such citizen believes and has good cause to believe the concealment of property in connection with crime.
It is very clear therefore that the statutory requirement relating to arrest of persons is more stringent than the statutory requirement relating to search and seizure of property, and this is as it sTiould be. Both of these sections of the code were enacted at the same time and have been in force for more than fifty years, and, while the practice has not been definitely settled with relation to the necessary preliminary steps in issuing a search warrant, the practice has been quite uniform for more than a half century to require nothing more than the filing of an affidavit as the basis for the issuance of a warrant for 'arrest. Since the statutes are so similar, except for the statute relating to arrest being somewhat more stringent, and since the same section of the bill of rights must necessarily apply to *450 both, manifestly the rule contended for by counsel for the accused in these cases could not be sustained without declaring the same rule in proceedings for arrest of the person, and no change could be made in either without overturning the well-settled practice of more than half a century.
In a rather recent per curiam, decision of this court concurred in by Marshall, C. J., Johnson, Hough, Robinson and Matthias, JJ., under date of July 5, 1922, entitled Cochran v. State, 105 Ohio St., 541, it was decided that where a magistrate issues a search warrant upon the filing of an affidavit alleging that affiant “has reason to believe and does believe,” etc., without further preliminary hearing or other evidence of probable cause, it is sufficient basis for the issuance of the warrant.
The further question is raised in some of the cases now under consideration that the writ was issued by a clerk of the court without any action whatever on the part of the court, and it is argued that the act of issuing the warrant is a judicial act and therefore an entry must appear upon the journal of the court authorizing and ordering the further action on the part of the clerk, and that without such order on the part of the court the action of the clerk is invalid. This question has never been decided by this court, and, so far as can be ascertained, has never been before the court for determination, neither has the question ever been before any of the inferior courts, so far as reported cases disclose, and it may therefore be assumed that it has always been considered the proper practice to issue such process without a preliminary order, in conformity to the similar practice in making arrest, and the *451 question seems never to have been raised until in these latter days of searching for technicalities as a means of thwarting the enforcement of the prohibition laws. Manifestly it would be wholly inconsistent for this court to declare that the issuance of a search warrant is a judicial act, when proceeding under Section 13483, General Code, while at the same time recognizing the validity as a ministerial act of the universal practice for more than fifty years of issuing a warrant for arrest under Section 13496, General Code. The protection of property against seizure is no more sacred than the protection of the person against arrest, and the sanctity of property, even though that property be the home, is upon no higher plane than that of the person’s liberty. The legislature has recognized the superior privilege of the person in requiring that an affidavit for a warrant for arrest of the person shall be made upon knowledge, and that the magistrate shall have reasonable ground to believe that the offense charged has been committed, while, as already stated, the affidavit for a warrant for search and seizure requires only that the affidavit shall be upon belief, based upon good cause on the part of the affiant, without requiring any judicial determination on the part of the magistrate.
These causes are argued in this court upon the theory that the constitution has been violated, but inasmuch as the statute has been faithfully followed it is manifest that if the constitution has been violated such violation must be charged to the legislature in the enactment of Section 13483, and for the reasons already stated it would necessarily follow that if Section 13483 is unconstitutional Section 13496 is also *452 a transgression of constitutional authority. This court could not hold that the ministerial act of the clerk of the municipal court in these cases is invalid without overthrowing both statutes referred to, and ihis could only be done by the concurrence of six members of this court upon a finding that those statutes are clearly and palpably in violation of the constitutional mandate. The procedure followed in these cases must be approved unless this court is prepared to revolutionize the criminal procedure in making arrests, searches and seizures. It requires no word picture to show how disastrous it would be to require that in all instances the judges of the municipal court, or other courts having clerks, be found before a warrant can be issued for the arrest of persons accused of offenses against our criminal laws. To so hold would facilitate the escape of criminals, and to require a preliminary hearing in each case before issuing process would be so burdensome as to render difficult if not impossible the administration of criminal justice. The existing practice having been of so long standing, and so universally acquiesced in, this court would not be justified in overthrowing the practice at this time without legislative action.
So far we have discussed only general laws. It will be found, however, that Section 4594, General Code, gives special authority to the clerk of a police court to issue search warrant process. That section reads as follows: “When an affidavit is filed with him for a peace warrant, search warrant, or charging any person with the commission of an offense, the clerk of police court shall have power to issue a warrant under the seal of such court to ar *453 rest the accused or search the place described.” This statute would also have to be declared unconstitutional in order to sustain the contentions of plaintiffs in error.
For the reasons already given this statute must be held to be constitutional, and if this conclusion is reached it is decisive not only of this matter, on the ground that the municipal court of Dayton is the police court of that city, but must be decisive of all other similar cases which may arise in Ohio, because police courts and municipal courts transact practically all of the misdemeanor judicial business in the state of Ohio other than that transacted by magistrates and other courts having no clerk.
The decisions of many of the courts of other states are in harmony with the foregoing views. "We will not discuss them further than to quote the language of one of them, Lowery, Jr., v. Gridley, 30 Conn., 450, at page 459: “Indeed it would be strange if a cask of liquor was more sacred in the eye of the law than a man’s person. But it has never been thought necessary that in the case of a common warrant it should be preceded by anything but the complaint * * * of a prosecuting officer.”
It should be noted that that declaration was made long before the enactment of the 18th Amendment, and it must be apparent that it is more sound and forceful in these days of difficult enforcement. That expression was made at a time when the traffic in liquor was perfectly lawful under regulations then provided. Inasmuch as it has become unlawful, and all property rights in liquor have been taken away, and liquors declared contraband, surely the above-quoted expression must be unqualifiedly approved.
*454 It is possible that some confusion on tbe subject of preliminary finding before issuance of a search warrant arises out of the fact that the requirements under the provisions of the 'Volstead act are much more exacting than under the Ohio statutes. Under the Volstead act it is required:
“Sec. 4. The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them.
“Sec. 5. The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist.” (40 Stat. at L., 228; Sections 10052 and 10053, Barnes’ Fed. Code.)
Any federal oases relative to the procedure and the preliminary requirements for a search warrant therefore have no force and effect as authorities in construing the Ohio statutes, or in settling the practice and procedure for a search warrant under the Crabbe act. The acts of congress relating to the procedure in obtaining search warrants under the revenue laws, and under the laws relating to export of arms and munitions of war, will be found to be entirely different from the provisions relating to search warrants under the Volstead act. .The difference in those provisions is significant as showing that the entire subject of obtaining the issuance of a search warrant is left to the sound discretion of the legislature, circumscribed only by the constitutional requirement that the warrant shall only issue *455 upon probable cause and that searches shall not be unreasonable.
Only one further question remains to be discussed, viz., whether in any case where liquors have been seized, whether lawfully or unlawfully, whether by virtue of a search warrant or not, and, if by virtue of a search warrant, whether the process has been regular or not, the persons from whom such liquors have been taken have a right to demand the return of the liquors before trial, and whether the liquors can under such circumstances be admitted as evidence on the part of the state.
Section 6212-16, General Code, provides that “it shall be unlawful to have or possess any liquor, or property designed for the manufacture of liquor, intended for use in violation of law or which has been so used, and no property rights shall exist in any such liquor or property
It will therefore be seen that the possession constitutes the offense, and placing the contraband property back into the possession of the accused would only have the effect of rendering him again guilty of an offense. It is very evident that counsel for the accused in all of these cases fully appreciates this fact because the opening statement in each and all of the petitions for return of property contains this significant allegation: “Now comes the defendant and disclaiming knowledge and ownership of the goods hereinafter described, states,” etc. It may be inquired upon what principle of law a court is required to order the return of property to a person who disclaims ownership or even knowledge of the goods. The procedure which has been approved by the supreme court of the United States *456 for returning certain kinds of lawful property, that of providing for an immediate hearing and a summary order, is analogous to the well-known practice in bankruptcy matters known as reclamation proceedings, and the practice in both matters is only intended as a short cut to save the parties the more tedious process of replevin. But we know of no principle of law, and have not been cited to any adjudicated case, where courts have delivered to persons property which does not belong to them. The claimants in all these case were entirely right in declaring that they had no ownership of the goods. By the provisions of both the Crabbe act and the Volstead act all such goods and property are declared to be contraband.
The courts of many of the states of the Union have had occasion to deal with this exact question, and in more than a score of the states it has been emphatically declared that intoxicating liquors, stolen property, gambling paraphernalia, burglar’s tools, narcotic drugs, counterfeiting devices, lottery tickets, and' other lands and classes of contraband property, the mere possession of which constitutes an unlawful act, may not be ordered returned, even though such property has been taken without lawful process from persons accused of crime; and in only three or four states has a contrary rule been declared. To enter upon a discussion of all of these cases, or even to give a list, of them, would extend this opinion to unreasonable proportions. In those states where a contrary rule has been declared it appears that they have attempted to- follow an erroneous interpretation of certain decisions of the supreme court of the United States. Before pro *457 eeeding to a discussion of those cases it should he remarked that almost uniformly the United States district courts and the United States courts of appeals have declared that such property may not be returned and have pointed out the true distinction between ordering the return of lawful property and that class of property which has been declared contraband, the mere possession of which constitutes an offense.
The earliest federal supreme court case is that of Boyd v. United States, 116 U. S., 616, decided in 1886. In that case it was decided that documents of a perfectly lawful nature, but which were nevertheless evidence of crime, which had been obtained by unlawful seizure, were not admissible in evidence. That principle was not disturbed until 1904 when the supreme court reversed the doctrine in the case of Adams v. New York, 192 U. S., 585. In 1914 the same court decided the ease of Weeks v. United States, 232 U. S., 383, in which the court again returned to the doctrine declared in the Boyd case. The Weeks case has been followed in Silverthorne Lumber Co. v. United States, 251 U. S., 385; Gouled v. United States, 255 U. S., 298; and Amos v. United States, 255 U. S., 313. Each and all of these cases related to property which anyone might lawfully have in his possession, and it was only in the Amos ease that the property consisted of intoxicating liquors. The Amos ease was decided entirely upon the theory' of the Gouled case, without any discussion of principles. It might therefore seem on a superficial examination of that case that it was intended to make all intoxicating liquors subject to the same rule as papers and other lawful property. *458 A careful examination of that case, however, discloses that Amos was not being prosecuted under the Volstead act. He was merely charged with having in his possession whiskey upon which the revenue had not been paid, usually called “Blockade Whiskey.” The possession of the whiskey in such case did not constitute the offense, but the real offense consisted in failing to pay the revenue. It requires no argument to show that in order to collect revenue from the manufacturer of whiskey it is necessary that whiskey must have a status as lawful property. The federal supreme court cases are therefore not out of harmony with the decisions of the great majority of the courts of the states.
The latest case which has been called to our attention, in which this distinction is clearly made, is O’Connor v. United States, 281 Fed. Rep., 396, decided by the district court of New Jersey, June 17, 1922, sixteen months after the Amos case was decided. From the opinion in that case, page 397, we quote: ‘ ‘ The petitioner invokes the Fourth Amendment to the United States Constitution, and cites Weeks v. United States, 232 U. S., 383, * * * Silverthorne Lumber Co. v. United States, 251 U. S., 385, * * * and Amos v. United States, 255 U. S., 313, * * * in support of his contention that these liquors were illegally taken. But neither this amendment nor the cited cases are applicable to the facts of this case.” After quoting the 4th Amendment, which is in all respects identical with the language of Section 14 of the Ohio Bill of Rights, the learned judge proceeds: “It is to be construed in conformity with basic principles of the common law, which were familiarly known to the framers of the *459 constitution.” . We further quote as follows from page 398:
“In Weeks v. United States, * * * and Amos v. United States, * * * the defendants’ respective homes were entered and searched, and certain of their properties (relevant evidence on the charges against them) seized, without a search warrant. These respective properties were subsequently used as evidence against them in a trial which resulted in their conviction. In Silverthorne Lumber Co. v. United States, 251 U. S., 835, * * * the defendants had been adjudged in contempt for refusing to obey an order of court ‘to produce [certain] books and documents of the company before the grand jury to be used in regard to alleged violation of the statutes of the United States’ by the said defendants. * * *
“These eases are of a different type than the instant case, In the Weeks and Amos cases, the seizures were made in the defendants’ private dwellings. In the Weeks and Silverthorne cases private books and papers were seized for the purpose of evidence only. In the instant ease the things seized, in the circumstances in which they were found, were contraband, stripped of any private rights therein. In this respect the property seized was of an entirely different character from that involved in the three cases last mentioned.
“The books and documents in the Weeks and Silverthorne cases were not forfeitable to the government. If they had been legally seized, the government would have been entitled to' only the temporary possession thereof, and that only for evidential purposes. And the liquors in thé Amos case, having been seized in the private dwelling of the de *460 fend ant, without warrant, presumptively continued in his private ownership
I repeat that it is unnecessary to discuss the numerous eases which agree with the views herein expressed, but it should be stated that the opinion of Baker, J., in United States v. Snyder, 278 Fed. Rep., 650, contains an excellent discussion, and the opinion of Sloane, J., in People v. Mayen, 205 Pac. Rep. (Cal.), 435, is equally cogent. Many constitutional and statutory safeguards have been provided to insure that persons accused of crime shall have a fair and impartial trial, and these safeguards apply to matters of form as well as substance; but neither the laws nor the courts are solicitous to aid persons accused of crime in concealing the evidence of their guilt. Many presumptions are indulged in favor of accused persons, and a strong measure of proof is required as to every material fact necessary to establish the guilt of the accused. But such indulgences do not reach to the extent of rejecting competent evidence because of the method by which it was procured. In the case of People v. Mayen, supra, the court made the following observation upon this subject:
“From the necessities of the case the law countenances many devious methods of procuring evidence in criminal oases. The whole system of espionage rests largely upon deceiving and trapping the wrong-doer into some involuntary disclosure of his crime. It dissimulates a way into his confidence; it listens at the keyhole and peers through the transom light. It is not nice, but it is necessary in ferreting out the crimes against society which are always done in darkness and concealment.
*461 “Thus it is that almost from time immemorial courts engaged in the trial of a criminal process have accepted competent and relevant evidence without question, and have refused to collaterally investigate the source or manner of its procurement, leaving the parties aggrieved to whatever direct remedies the law provides to punish the trespasser, or recover the possession of goods wrongfully taken.”
In those cases holding to the opposite view it is urged that to use the evidence would be tantamount to compelling the accused to be a witness against himself, thereby violating the 5th Federal Amendment. That amendment has no relation to state criminal procedure, but the same provision is found in Section 10 of the Ohio Bill of Bights, and the proposition therefore challenges our attention. Whatever might be said of using evidence which the accused is entitled to again have lawfully in his possession, the principle can have no application to those cases where the possession constitutes the offense. The accused could only be the unwilling source of the evidence if the contraband property had been placed in his possession against his will. If he is willing to possess liquor he must be said to be the willing source of the evidence. He is only the unwilling source of the evidence if unwilling to possess the goods, but in this event he cannot be guilty at all.
All that has been said on this latter question can have no relation to liquors lawfully possessed in the home, and if liquor should be taken from a bona fide dwelling, without process, or by unlawful process, such goods should be returned to the accused before the trial. But in those cases where there is *462 a failure to show lawful possession the liquor may lawfully he admitted in evidence on the part of the state.
There has been a great deal of misguided sentiment foisted upon a patient people during these latter days about the constitutional rights and privileges of the criminal classes. If all the doctrines which are being urged by attorneys representing liquor law violators should be adopted by the courts as the true interpretation of our sacred bill of rights, it would no longer be recognized as a charter of government and as a guarantee of protection of the weak against the aggressions of the strong, but rather as a charter of unbridled license and a certificate of character to the criminal classes.
The Federal Bill of Rights, found in the first ten amendments of the Federal Constitution, was designed for the protection of the people against the encroachments of tyrannical government, but it is now sought to interpret it as a shield of law viola.tors from the enforcement provisions of statutes • which are concededly valid. The Volstead act has been pronounced valid and.constitutional by the supreme court of the United States, and no one doubts the correctness of that judgment. The Crabbe act in Ohio, supplemented by the Miller act, is in most respects identical with the provisions of the Volstead act, and is universally accepted by the bench and bar of Ohio as a valid enactment pursuant to the express power to enact appropriate legislation to enforce the provisions of the amendments. While it is firmly established that the enforcement laws are valid, the actual enforcement is claimed to be prohibited by other constitutional guarantees unless *463 such means only are employed as are proven to be ineffectual. Our state and federal constitutions constitute the groundwork upon which is rested the statute law defining crimes and making provision for conviction and punishment. It is the purpose of the constitutions to advance the cause of safe and orderly government, not to thwart or render it impossible. The facts and circumstances of many searches and seizures without process are reasonable under a reasonable construction of the constitution and statutes which would be considered unreasonable under an unreasonable construction. In other words, the reasonableness of a search and seizure is one of mixed fact and law, depending upon the facts and circumstances of the” case under consideration. All the foregoing questions are therefore resolved in favor of the state, and the judgments in all of the cases under consideration will be affirmed.

Judgments affirmed.

Hough, Wanamaker, Robinson, Jones, Matthias and Clark, JJ., concur.