# WEEKS *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

No. 461. Argued December 2, 3, 1913.—Decided February 24, 1914.

Under the Fourth Amendment Federal courts and officers are under such limitations and restraints in the exercise of their power and authority as to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law.

The protection of the Fourth Amendment reaches all alike, whether accused of crime or not; and the duty of giving it force and effect is obligatory on all entrusted with the enforcement of Federal laws.

The tendency of those executing Federal criminal laws to obtain convictions by means of unlawful seizures and enforced confessions in violation of Federal rights is not to be sanctioned by the courts which are charged with the support of constitutional rights.

The Federal courts cannot, as against a seasonable application for their return, in a criminal prosecution, retain for the purposes of evidence against the accused his letters and correspondence seized in his house during his absence and without his authority by a United States marshal holding no warrant for his arrest or for the search of his premises.

While the efforts of courts and their officials to bring the guilty to punishment are praiseworthy, they are not to be aided by sacrificing the great fundamental rights secured by the Constitution.

While an incidental seizure of incriminating papers, made in the execution of a legal warrant, and their use as evidence, may be justified, and a collateral issue will not be raised to ascertain the source of competent evidence, *Adams v. New York*, 192 U. S. 585, that rule does not justify the retention of letters seized in violation of the protection given by the Fourth Amendment where an application in the cause for their return has been made by the accused before trial.

The court has power to deal with papers and documents in the possession of the District Attorney and other officers of the court and to direct their return to the accused if wrongfully seized.

Where letters and papers of the accused were taken from his premises by an official of the United States, acting under color of office but

without any search warrant and in violation of the constitutional rights of accused under the Fourth Amendment, and a seasonable application for return of the letters and papers has been refused and they are used in evidence over his objections, prejudicial error is committed and the judgment should be reversed.

The Fourth Amendment is not directed to individual misconduct of state officers. Its limitations reach the Federal Government and its agencies. *Boyd* v. *United States,* 116 U. S. 616.

THE facts, which involve the validity under the Fourth Amendment of a verdict and sentence and the extent to which the private papers of the accused taken without search warrant can be used as evidence against him, are stated in the opinion.

*Mr. Martin J. O'Donnell* for plaintiff in error:

The decision of the District Court denying defendant's petition to return his property and private papers after it had taken jurisdiction of the subject-matter set forth in said petition and found that said private papers had come into the possession of the Government as a result of its own unlawful acts in violation of its own Constitution is reversible error. *Adams* v. *New York,* 192 U. S. 585; *Boyd* v. *United States,* 116 U. S. 616; *Hale* v. *Henkel,* 201 U. S. 43; *United States* v. *McHie,* 196 Fed. Rep. 586; *United States* v. *Wilson,* 163 Fed. Rep. 338; *United States* v. *McHie,* 194 Fed. Rep. 894; *United States* v. *Mills,* 185 Fed. Rep. 318; *Wise* v. *Mills,* 220 U. S. 549; *Wise* v. *Henkel,* 220 U. S. 549.

The reception in evidence of the property and papers seized by officers of the Government after the court had inquired into and found that same had been so seized was reversible error. 47 Am. St. Rep. 175; Blackstone's Com., Bk. 3, p. 256; Blackstone, Bk. IV; *Boyd* v. *United States,* 116 U. S. 616; Broom's Leg. Max. (7th ed.) 227; *Counselman* v. *Hitchcock,* 142 U. S. 547; *Ex parte Jackson,* 96 U. S. 727; *Gindrat* v. *People,* 138 Illinois, 103; 1 Greenleaf

on Evidence, § 245a; *Marshall .v. Riley,* 7 Georgia, 367; Note 1, Blackstone's Com., Bk. III, p. 256; *Rusher* v. *State,* 94 Georgia, 366; *Shields* v. *State,* 104 Alabama, 35; *State* v. *Flynn,* 36 N. H. 64; *State* v. *Underwood,* 78 S. E. 1103; *Thornton* v. *State,* 117 Wisconsin, 338; *Underwood* v. *State,* 78 S. E. Rep. 1103; *United States* v. *Wong Quong,* 94 Fed. Rep. 832; 4 Wigmore on Evidence, §§ 2251–2270.

The common law rules of evidence embodied in the Constitution have, by being so embodied, been clothed with the dignity of a fundamental law and the application of same under the Constitution is not limited by the rules of the common law. *Boyd* v. *United States,* 116 U. S. 616; Black's Int. of Laws; *Bram* v. *United States,* 168 U. S. 532, 542; *Brown* v. *Walker,* 161 U. S. 596–597; *Counselman* v. *Hitchcock,* 142 U. S. 547; *Emery's Case,* 107 Massachusetts, 172; *Enbeck* v. *Carrington,* 19 How. St. Tr. 1029; *People* v. *Kelly,* 24 N. Y. 74; Sohm in Inst. of Roman Law, 2d ed., p. 30; Thayer on Evidence, 263, 276.

*The Solicitor General* and *Mr. Assistant Attorney General Denison* for the United States, submitted:

The defendant having been found guilty—on a single count only—comes here on writ of error, making fifteen assignments of which the only one requiring notice is in substance that the retention of this property and its admission in evidence against him violated his right to be secure from unreasonable searches and seizures and to refrain from being a witness against himself, as guaranteed by the Fourth and Fifth Amendments.

The question is no longer open. *Adams* v. *New York,* 192 U. S. 585; *Hale* v. *Henkel,* 201 U. S. 43; *Am. Tobacco Co.* v. *Werckmeister,* 207 U. S. 284, 302; *Holt* v. *United States,* 218 U. S. 245, 252; *United States* v. *Wilson,* 163 Fed. Rep. 338; *Hardesty* v. *United States,* 164 Fed. Rep. 420.

The *Adams Case* is sought to be distinguished on the

ground that it involved a state action, whereas this involves a Federal action. The distinction does exist on the facts, but it is immaterial because the court passed that phase of the *Adams Case* and based the decision on the point that, even if the Amendments were applicable to state action, *Twining* v. *New Jersey*, 211 U. S. 78, 92, they had not been violated.

MR. JUSTICE DAY delivered the opinion of the court.

An indictment was returned against the plaintiff in error, defendant below, and herein so designated, in the District Court of the United States for the Western District of Missouri, containing nine counts. The seventh count, upon which a conviction was had, charged the use of the mails for the purpose of transporting certain coupons or tickets representing chances or shares in a lottery or gift enterprise, in violation of § 213 of the Criminal Code. Sentence of fine and imprisonment was imposed. This writ of error is to review that judgment.

The defendant was arrested by a police officer, so far as the record shows, without warrant, at the Union Station in Kansas City, Missouri, where he was employed by an express company. Other police officers had gone to the house of the defendant and being told by a neighbor where the key was kept, found it and entered the house. They searched the defendant's room and took possession of various papers and articles found there, which were afterwards turned over to the United States Marshal. Later in the same day police officers returned with the Marshal, who thought he might find additional evidence, and, being admitted by someone in the house, probably a boarder, in response to a rap, the Marshal searched the defendant's room and carried away certain letters and envelopes found in the drawer of a chiffonier. Neither the marshal nor the police officers had a search warrant.

The defendant filed in the cause before the time for trial the following petition:

"Petition to Return Private Papers, Books and Other Property.

"Now comes defendant and states that he is a citizen and resident of Kansas City, Missouri, and that he resides, owns and occupies a home at 1834 Penn Street in said City;

"That on the 21st day of December, 1911, while plaintiff was absent at his daily vocation certain officers of the government whose names are to plaintiff unknown, unlawfully and without warrant or authority so to do, broke open the door to plaintiff's said home and seized all of his books, letters, money, papers, notes, evidences of indebtedness, stock, certificates, insurance policies, deeds, abstracts, and other muniments of title, bonds, candies, clothes and other property in said home, and this in violation of Sections 11 and 23 of the Constitution of Missouri and of the 4th and 5th Amendments to the Constitution of the United States:

"That the District Attorney, Marshal and Clerk of the United States Court for the Western District of Missouri took the above described property so seized into their possession and have failed and refused to return to defendant portion of same, to-wit:

"One (1) leather grip, value about $7.00; one (1) tin box valued at $3.00; one (1) Pettis County, Missouri, bond, value $500.00; three (3) Mining stock certificates which defendant is unable to more particularly describe valued at $12,000.00, and certain stock certificates in addition thereto issued by the San Domingo Mining Loan and Investment Company, about $75.00 in currency; one (1) newspaper published about 1790, an heirloom; and certain other property which plaintiff is now unable to describe:

"That said property is being unlawfully and improperly

held by said District Attorney, Marshal and Clerk in violation of defendant's rights under the Constitution of the United States and the State of Missouri:

"That said District Attorney purposes to use said books, letters, papers, certificates of stock, etc., at the trial of the above entitled cause and that by reason thereof and of the facts above set forth defendant's rights under the amendments aforesaid to the Constitution of Missouri, and the United States have been and will be violated unless the Court order the return prayed for:

"Wherefore, defendant prays that said District Attorney, Marshal and Clerk be notified, and that the Court direct and order said District Attorney, Marshal and Clerk to return said property to said defendant."

Upon consideration of the petition the court entered in the cause an order directing the return of such property as was not pertinent to the charge against the defendant, but denied the petition as to pertinent matter, reserving the right to pass upon the pertinency at a later time. In obedience to the order the District Attorney returned part of the property taken and retained the remainder, concluding a list of the latter with the statement that, "all of which last above described property is to be used in evidence in the trial of the above entitled cause, and pertains to the alleged sale of lottery tickets of the company above named."

After the jury had been sworn and before any evidence had been given, the defendant again urged his petition for the return of his property, which was denied by the court. Upon the introduction of such papers during the trial, the defendant objected on the ground that the papers had been obtained without a search warrant and by breaking open his home, in violation of the Fourth and Fifth Amendments to the Constitution of the United States, which objection was overruled by the court. Among the papers retained and put in evidence were a number of

lottery tickets and statements with reference to the lottery, taken at the first visit of the police to the defendant's room, and a number of letters written to the defendant in respect to the lottery, taken by the Marshal upon his search of defendant's room.

The defendant assigns error, among other things, in the court's refusal to grant his petition for the return of his property and in permitting the papers to be used at the trial.

It is thus apparent that the question presented involves the determination of the duty of the court with reference to the motion made by the defendant for the return of certain letters, as well as other papers, taken from his room by the United States Marshal, who, without authority of process, if any such could have been legally issued, visited the room of the defendant for the declared purpose of obtaining additional testimony to support the charge against the accused, and having gained admission to the house took from the drawer of a chiffonier there found certain letters written to the defendant, tending to show his guilt. These letters were placed in the control of the District Attorney and were subsequently produced by him and offered in evidence against the accused at the trial. The defendant contends that such appropriation of his private correspondence was in violation of rights secured to him by the Fourth and Fifth Amendments to the Constitution of the United States. We shall deal with the Fourth Amendment, which provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized."

The history of this Amendment is given with particularity in the opinion of Mr. Justice Bradley, speaking for

the court in *Boyd* v. *United States,* 116 U. S. 616.    As was there shown, it took its origin in the determination of the framers of the Amendments to the Federal Constitution to provide for that instrument a Bill of Rights, securing to the American people, among other things, those safeguards which had grown up in England to protect the people from unreasonable searches and seizures, such as were permitted under the general warrants issued under authority of the Government by which there had been invasions of the home and privacy of the citizens and the seizure of their private papers in support of charges, real or imaginary, made against them.    Such practices had also received sanction under warrants and seizures under the so-called writs of assistance, issued in the American colonies.    See 2 Watson on the Constitution, 1414 *et seq.* Resistance to these practices had established the principle which was enacted into the fundamental law in the Fourth Amendment, that a man's house was his castle and not to be invaded by any general authority to search and seize his goods and papers.    Judge Cooley, in his Constitutional Limitations, pp. 425, 426, in treating of this feature of our Constitution, said: "The maxim that 'every man's house is his castle,' is made a part of our constitutional law in the clauses prohibiting unreasonable searches and seizures, and has always been looked upon as of high value to the citizen."    "Accordingly," says Lieber in his work on Civil Liberty and Self-Government, 62, in speaking of the English law in this respect, "no man's house can be forcibly opened, or he or his goods be carried away after it has thus been forced, except in cases of felony, and then the sheriff must be furnished with a warrant, and take great care lest he commit a trespass.    This principle is jealously insisted upon."    In *Ex parte Jackson,* 96 U. S. 727, 733, this court recognized the principle of protection as applicable to letters and sealed packages in the mail, and held that consistently

with this guaranty of the right of the people to be secure in their papers against unreasonable searches and seizures such matter could only be opened and examined upon warrants issued on oath or affirmation particularly describing the thing to be seized, "as is required when papers are subjected to search in one's own household."

In the *Boyd Case, supra,* after citing Lord Camden's judgment in *Entick* v. *Carrington,* 19 Howell's State Trials, 1029, Mr. Justice Bradley said (630):

"The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employés of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offence; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offence,—it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment."

In *Bram* v. *United States,* 168 U. S. 532, this court in speaking by the present Chief Justice of *Boyd's Case,* dealing with the Fourth and Fifth Amendments, said (544):

"It was in that case demonstrated that both of these Amendments contemplated perpetuating, in their full efficacy, by means of a constitutional provision, principles of humanity and civil liberty, which had been secured in the mother country only after years of struggle, so as to implant them in our institutions in the fullness of their integrity, free from the possibilities of future legislative change."

The effect of the Fourth Amendment is to put the courts

of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all entrusted under our Federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.

What then is the present case? Before answering that inquiry specifically, it may be well by a process of exclusion to state what it is not. It is not an assertion of the right on the part of the Government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime. This right has been uniformly maintained in many cases. 1 Bishop on Criminal Procedure, § 211; Wharton, Crim. Plead. and Practice, 8th ed., § 60; *Dillon* v. *O'Brien and Davis,* 16 Cox C. C. 245. Nor is it the case of testimony offered at a trial where the court is asked to stop and consider the illegal means by which proofs, otherwise competent, were obtained—of which we shall have occasion to treat later in this opinion. Nor is it the case of burglar's tools or other proofs of guilt found upon his arrest within the control of the accused.

The case in the aspect in which we are dealing with it involves the right of the court in a criminal prosecution to retain for the purposes of evidence the letters and correspondence of the accused, seized in his house in his absence and without his authority, by a United States Marshal holding no warrant for his arrest and none for the search of his premises. The accused, without awaiting his trial, made timely application to the court for an order for the return of these letters, as well as other property. This application was denied, the letters retained and put in evidence, after a further application at the beginning of the trial, both applications asserting the rights of the accused under the Fourth and Fifth Amendments to the Constitution. If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the Fourth Amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land. The United States Marshal could only have invaded the house of the accused when armed with a warrant issued as required by the Constitution, upon sworn information and describing with reasonable particularity the thing for which the search was to be made. Instead, he acted without sanction of law, doubtless prompted by the desire to bring further proof to the aid of the Government, and under color of his office undertook to make a seizure of private papers in direct violation of the constitutional prohibition against such action. Under such circumstances, without sworn information and particular description, not even an order of court would

have justified such procedure, much less was it within the authority of the United States Marshal to thus invade the house and privacy of the accused. In *Adams* v. *New York*, 192 U. S. 585, this court said that the Fourth Amendment was intended to secure the citizen in person and property against unlawful invasion of the sanctity of his home by officers of the law acting under legislative or judicial sanction. This protection is equally extended to the action of the Government and officers of the law acting under it. (*Boyd Case, supra.*) To sanction such proceedings would be to affirm by judicial decision a manifest neglect if not an open defiance of the prohibitions of the Constitution, intended for the protection of the people against such unauthorized action.

The court before which the application was made in this case recognized the illegal character of the seizure and ordered the return of property not in its judgment competent to be offered at the trial, but refused the application of the accused to turn over the letters, which were afterwards put in evidence on behalf of the Government. While there is no opinion in the case, the court in this proceeding doubtless relied upon what is now contended by the Government to be the correct rule of law under such circumstances, that the letters having come into the control of the court, it would not inquire into the manner in which they were obtained, but if competent would keep them and permit their use in evidence. Such proposition, the Government asserts, is conclusively established by certain decisions of this court, the first of which is *Adams* v. *New York, supra.* In that case the plaintiff in error had been convicted in the Supreme Court of the State of New York for having in his possession certain gambling paraphernalia used in the game known as policy, in violation of the Penal Code of New York. At the trial certain papers, which had been seized by police officers executing a search warrant for the discovery and

seizure of policy slips and which had been found in addition to the policy slips, were offered in evidence over his objection. The conviction was affirmed by the Court of Appeals of New York (176 N.·Y. 351), and the case was brought here for alleged violation of the Fourth and Fifth Amendments to the Constitution of the United States. Pretermitting the question whether these amendments applied to the action of the States, this court proceeded to examine the alleged violations of the Fourth and Fifth Amendments, and put its decision upon the ground that· the papers found in the execution of the search warrant, which warrant had a legal purpose in the attempt to find gambling paraphernalia, were competent evidence against the accused, and their offer in testimony did not violate his constitutional privilege against unlawful search or seizure, for it was held that such incriminatory documents thus discovered were not the subject of an unreasonable search and seizure, and in effect that the same were incidentally seized in the lawful execution of a warrant and not in the wrongful invasion of the home of the citizen and the unwarranted seizure of his papers and property. It was further held, approving in that respect the doctrine laid down in 1 Greenleaf, § 254a, that it was no valid objection to the use of the papers that they had been thus seized, and that the courts in the course of a trial would not make an issue to determine that question, and many state cases were cited supporting that doctrine.

The same point had been ruled in *People* v.·*Adams*, 176 N. Y. 351, from 'which decision the case was brought to this court, where it was held that if the papers seized in · addition to the policy slips were competent evidence in the case, as the court held they were, they were admissible in evidence at the trial, the court saying (p. 358): "The underlying principle obviously is that the court, when engaged in trying a criminal cause, will not take notice of

the manner in which witnesses have possessed themselves of papers, or other articles of personal property, which are material and properly offered in evidence." This doctrine thus laid down by the New York Court of Appeals and approved by this court, that a court will not in trying a criminal cause permit a collateral issue to be raised as to the source of competent testimony, has the sanction of so many state cases that it would be impracticable to cite or refer to them in detail. Many of them are collected in the note to *State* v. *Turner*, 136 Am. St. Rep. 129, 135 *et seq.* After citing numerous cases the editor says: "The underlying principle of all these decisions obviously is, that the court, when engaged in the trial of a criminal action, will not take notice of the manner in which a witness has possessed himself of papers or other chattels, subjects of evidence, which are material and properly offered in evidence: *People* v. *Adams*, 176 N. Y. 351, 98 Am. St. Rep. 675, 68 N. E. 636, 63 L. R. A. 406. Such an investigation is not involved necessarily in the litigation in chief, and to pursue it would be to halt in the orderly progress of a cause, and consider incidentally a question which has happened to cross the path of such litigation, and which is wholly independent thereof."

It is therefore evident that the *Adams Case* affords no authority for the action of the court in this case, when applied to in due season for the return of papers seized in violation of the Constitutional Amendment. The decision in that case rests upon incidental seizure made in the execution of a legal warrant and in the application of the doctrine that a collateral issue will not be raised to ascertain the source from which testimony, competent in a criminal case, comes.

The Government also relies upon *Hale* v. *Henkel*, 201 U. S. 43, in which the previous cases of *Boyd* v. *United States, supra, Adams* v. *New York, supra, Interstate Com-*

*merce Commission* v. *Brimson,* 154 U. S. 447, and *Interstate Commerce Commission* v. *Baird,* 194 U. S. 25, are reviewed, and wherein it was held that a *subpœna duces tecum* requiring a corporation to produce all its contracts and correspondence with no less than six other companies, as well as all letters received by the corporation from thirteen other companies located in different parts of the United States, was an unreasonable search and seizure within the Fourth Amendment, and it was there stated that (201 U. S. p. 76) "an order for the production of books and papers may constitute an unreasonable search and seizure within the Fourth Amendment. While a search ordinarily implies a quest by an officer of the law, and a seizure contemplates a forcible dispossession of the owner, still, as was held in the *Boyd Case,* the substance of the offense is the compulsory production of private papers, whether under a search warrant or a *subpœna duces tecum,* against which the person, be he individual or corporation, is entitled to protection." If such a seizure under the authority of a warrant supposed to be legal, constitutes a violation of the constitutional protection, *a fortiori* does the attempt of an officer of the United States, the United States Marshal, acting under color of his office, without even the sanction of a warrant, constitute an invasion of the rights within the protection afforded by the Fourth Amendment.

Another case relied upon is *American Tobacco Co.* v. *Werckmeister,* 207 U. S. 284, in which it was held that the seizure by the United States Marshal in a copyright case of certain pictures under a writ of replevin did not constitute an unreasonable search and seizure. The other case from this court relied upon is *Holt* v. *United States,* 218 U. S. 245, in which it was held that testimony tending to show that a certain blouse which was in evidence as incriminating him, had been put upon the prisoner and fitted him, did not violate his constitutional right. We

are at a loss to see the application of these cases to the one in hand.

. The right of the court to deal with papers and documents in the possession of the District Attorney and other officers of the court and subject to its authority was recognized in *Wise* v. *Henkel,* 220 U. S. 556. That papers wrongfully seized should be turned over to the accused has been frequently recognized in the early as well as later decisions of the courts. 1 Bishop on Criminal Procedure, § 210; *Rex* v. *Barnett,* 3 C. & P. 600; *Rex* v. *Kinsey,* 7 C. & P. 447; *United States* v. *Mills,* 185 Fed. Rep. 318; *United States* v. *McHie,* 194 Fed. Rep. 894, 898.

We therefore reach the conclusion that the letters in question were taken from the house of the accused by an official of the United States acting under color of his office in direct violation of the constitutional rights of the defendant; that having made a seasonable application for their return, which was heard and passed upon by the court, there was involved in the order refusing the application a denial of the constitutional rights of the accused, and that the court should have restored these letters to the accused. In holding them and permitting their use upon the trial, we think prejudicial error was committed. As to the papers and property seized by the policemen, it does not appear that they acted under any claim of Federal authority such as would make the Amendment applicable to such unauthorized seizures. The record shows that what they did by way of arrest and search and seizure was done before the finding of the indictment in the Federal court, under what supposed right or authority does not appear. What remedies the defendant may have against them we need not inquire, as the Fourth Amendment is not directed to individual misconduct of such officials. Its limitations reach the Federal Government and its agencies. *Boyd Case,* 116 U. S., *supra,* and see *Twining* v. *New Jersey,* 211 U. S. 78.

It results that the judgment of the court below must be reversed, and the case remanded for further proceedings in accordance with this opinion.

*Reversed.*