## PARKER v. UNITED STATES.

### No. 12395.

United States Court of Appeals
Ninth Circuit.

June 26, 1950.

Allan Pomeroy and Ernest R. Cluck, Seattle, Wash., for appellant.

J. Charles Dennis, U. S. Attorney, Vaughn Evans and John F. Dore, Asst. U. S. Attorneys, all of Seattle, Wash., for appellee.

Before BIGGS, HEALY and POPE, Circuit Judges.

BIGGS, Circuit Judge.

The defendant, Parker, was convicted on an indictment charging him with receiving and concealing opium and Yen Shee, the narcotics having been imported into the United States in violation of Section 174, Title 21 United States Code Annotated. Prior to the trial the defendant moved to suppress evidence, viz., narcotics secured at his residence in Seattle at the time of his arrest. The court denied the application, the narcotics were introduced in evidence with testimony relating to their seizure over Parker's objections and, after judgment of sentence, he appealed. The questions raised go to the legality of his arrest, the search of his residence and the seizure of the evidence.

The following appears from affidavits filed in opposition to the application to suppress the evidence and from testimony given at the trial. Captain Morris, the supervising captain of the night shift and the captain of the Felony Squad of the Seattle Police Department, with four other officers, was preparing to leave the Police Station about 9:30 P.M. on November 24, 1948. There was evidence to the effect that Morris at this time received a telephone call from a person who would not identify himself, informing Morris that there was a man in Apartment B at 1219½ Yesler Street who was poisoned " * * * and in bad shape and somebody better get up there in a hurry." The informant stated that some one would meet the police officer at the door. The address given was in the direction in which Captain Morris's squad originally had planned to go in connection with another case. Morris thereupon instructed the members of his squad to meet him at 12th and Yesler Streets.

Arriving at the address given, Captain Morris directed two members of the squad to remain on the street and took the other two policemen with him. The three officers walked into the apartment building. The ground floor entrance was closed but not locked. No one was in the hall. The officers then climbed the stairs to the second floor, where, according to the testimony, they found the door leading to Apartment B open about eight inches to a foot. Captain Morris called out several times, "Is anyone home?", while pushing the door open more widely and entering the apartment. Morris went through the living room and into the dining room, again calling out, "Anybody home?" At the left of the dining room there was a door. Morris opened the door and asked, "Is anybody home?" At no time was there any answer to his inquiries. Captain Morris saw Parker lying on the bed "unconscious or with his eyes * * * shut". Morris testified that Parker opened his eyes, smiled at him and said, "There it is." Morris asked, "There what is?" Parker said again, "There it is." Morris asked again, "There what is?" Morris testified that he looked down at the bed and saw an opium layout lying on the bed spread. He exclaimed, "By golly, it is opium." Morris then told Parker that he was under arrest and the latter was taken into the other room and handcuffed. The testimony and affidavits of the other officers corroborate Morris's evidence.

The two officers on the street were summoned and the premises were searched. It does not appear that more opium or Yen

Shee was found during the search of the apartment. 250 grains of opium prepared for smoking and 75 grains of Yen Shee had been found on the bed as was opium smoking equipment.

Parker's testimony was in contradiction to that of the police officers. He stated that the outer door of the apartment was not open and that he did not say to Captain Morris or any police officer, "There it is", in reference to the opium or Yen Shee. He insisted that the officers entered his apartment and seized the material and articles and arrested him over his objections. He asserts that his arrest, the search of his home and the seizure of the narcotics were in violation of the rights guaranteed to him by the Fourth and Fifth Amendments.

It is conceded that the police officers did not procure a search warrant or a warrant for Parker's arrest. About two days later Captain Morris called the Federal Bureau of Narcotics on the telephone and turned the material and articles seized over to that agency. Parker was indicted by a federal grand jury and his prosecution in the instant case followed. It does not appear how or when he was arrested on the federal charge but Parker does not assert that any arrest subsequent to that made by the Seattle police officers was illegally effected.

The law of this Circuit applicable under these circumstances was settled by this court in Symons v. United States, 9 Cir., 1949, 178 F.2d 615, certiorari denied 70 S.Ct. 1006, citing and relying in part on Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408, 154 A.L.R. 982, and Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819. Compare, on the issues of unreasonable search and seizure and arrest, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430; Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409, and Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177. In view of this court's decisive ruling we may not now garnish the platter or add or subtract from its contents. Even if the arrest, search and

seizure in the instant case were unreasonable the United States nonetheless was entitled to use the evidence secured at Parker's trial unless there was such complicity by federal officials as to bring the seizure within the prohibition of the Amendments to the Constitution of the United States referred to. While Parker insists that there was complicity between the Seattle police officers and the federal officers of the Narcotic Bureau there is an utter failure of proof on this point. At best the defendant can point only to a pattern, established, as must be conceded, by custom, under which incriminating evidence which will support a federal charge often is turned over by State or city officers to federal officials. Here the delivery of the material and articles was made to the federal officials two days after the search and seizure. This connection is the only one shown. The insulation between the city officers and the federal officials must be deemed to be adequate in the instant case.

Consequently we conclude that the court below did not err in not suppressing the evidence. The judgment is affirmed.