**UNITED STATES v. SCOTTI.**

**Crim. A. No. 3558.**

United States District Court
S. D. Texas, Corpus Christi Division.

Oct. 25, 1950.

Brian S. Odem, U. S. Dist. Atty., John C. Snodgrass, Asst. U. S. Dist. Atty., Houston, Tex., for plaintiff.

Scott & Dancer, Corpus Christi, Tex., for defendant.

ALLRED, District Judge.

Defendant, charged with unlawful acquisition of marihuana in violation of 26 U.S.C. § 2593(a), waived trial by jury. Seasonable motion was made to suppress evidence obtained by Corpus Christi city officers, upon which the case depends. This motion was carried along with trial of the case upon the merits.

On August 1, 1949, two Corpus Christi city officers, acting pursuant to a purported search warrant issued by a Justice of the Peace, called at the residence of defendant for the purpose of making a search.[1] No one was about the premises when the officers arrived and they started back to town. En route they saw defendant and his wife in an automobile with two other people. Defendant stopped his car to let the other people alight.

The officers drove up and asked if this was "Scotti." Upon an affirmative reply the officers ordered defendant out of the car and searched it. They then told him that they wanted to search his home, Scotti told them that it was perfectly all right; that they didn't need a search warrant to search his home at any time. They ordered him into their car and drove to his home. One of the officers says that he told defendant on the way that he had a search warrant and that this was *after* he had told him it was all right to search the car. The other officer states that they told defendant of the search warrant *before* the alleged consent.

The officers searched the house and found a small quantity of marihuana, wadded in a newspaper among other papers, in a woven Mexican basket hanging on the wall. Defendant told the officers that he hated to go back to prison; that he had a considerable sum of money in his wife's name; and that "we ought to be able to work out a deal between us."

---

1. The search warrant was based upon an affidavit of one of the city officers to the effect that he had reason to believe and did believe that marihuana was being illegally concealed by defendant "at 230 Pueblo St., in Corpus Christi, Nueces County, Texas." No statement was made as to the basis for such belief. Both the affidavit for the warrant and the warrant itself were filled in on forms provided for search for stolen property. Some of the printed words on the regular forms were stricken out, but both are confused by failure to strike out applicable words on the forms. The affidavit and warrant were insufficient under federal law. The search warrant also ordered defendant's arrest.

At the time of the trial, I expressed the opinion from the bench that defendant had consented to the search. Upon consideration of the authorities, however, I have concluded that the consent was not voluntary. Ray v. United States, 5 Cir., 84 F.2d 654; United States v. Asendio, 3 Cir., 171 F.2d 122; United States v. Rembert, D.C.Tex., 284 F. 996; but Cf. Cantrell v. U. S. (Hunnicutt v. U. S.), 5 Cir., 15 F.2d 953.

Defendant's motion to suppress the evidence alleges that the Corpus Christi city officers were working in co-operation with federal narcotic officers, pursuant to an understanding and practice of several years' duration, whereby immediately after arrest of persons charged with marihuana by the city officers they would be and were immediately turned over to the federal officers for prosecution. Texas laws prohibit traffic in marihuana, the minimum punishment for such felony being two years imprisonment. Art. 725b, Vernon's Texas Penal Code.

Both state and federal officers vigorously denied any agreement or understanding. The record shows that City police make many arrests for various offenses, many being for suspected traffic in marihuana. Arrests for other offenses, or for "investigation," often result in the finding of marihuana. In most cases the evidence is insufficient for the filing of charges in any Court. However, the record shows that in a little over two years city officers turned over to federal officers at least twenty marihuana cases upon which complaints were filed with the United States Commissioner, showing the arresting officers as city officers. On the other hand, in a little more than four years (including the two-year period in question) city officers only filed a total of eight marihuana cases in the state court.[2]

One city officer testified that, while he had no understanding or agreement with federal officers, the practice at the city police station was to call the federal narcotic agents after arrests by the officers, in "big" cases, for prosecution in the federal court. Two others testified that sometimes they felt that the minimum two-year punishment (under state law) was too severe in a particular case and, in those cases, the federal officers were asked to take the case because of the greater latitude of permissible punishment.

Oklahoma W. Johnson, Narcotic Agent from the San Antonio office, testified that three narcotic officers were available in the vast district in south and southwest Texas; that he had adopted a number of cases made by the city officers during the past few years; that he had no agreement but that he had told the local officers to call him at any time and that he would look over any cases they might submit and then determine whether he would file federal charges. All the calls from Corpus Christi to Johnson seem to have been made by Capt. Matthews, chief of Corpus Christi detectives, who was seriously ill at the time of the trial and unable to testify.

On the morning after defendant's arrest, Johnson was called by Matthews. He came immediately to Corpus Christi. Upon arrival, the city officers turned over to him the defendant Scotti and one other case in which they had made an arrest for marihuana. Both were immediately adopted by Johnson and charges filed before the United States Commissioner.

I find, therefore, that there was a practice on the part of the Corpus Christi city officers to call the federal narcotic officers frequently, (but not always) when people arrested by the City officers were found to be in possession of marihuana; and that the federal officers frequently, but not always, "adopted" the cases for federal prosecution. I further find, however, that before and at the time of making the arrests and seizures, the city officers were engaged in enforcement of the state marihuana law, and were not acting solely

---

2. A total of 14 marihuana cases have been filed in the state courts from April 30, 1946, to October 11, 1950. Of these 14 cases, 8 have been "made" by city officers, 3 by county officers, and the source of the other 3 is not disclosed by the evidence.

for the purpose of aiding in enforcement of federal law. There is no showing that the federal officers had knowledge, before or after, of the illegality of any arrest or seizure; and there is no showing that there was any irregularity in any arrest or seizure, other than the one involved in this case and its companion, United States v. John Walker, No. 3561.

At common law, evidence, however obtained, was admissible. Even after adoption of the Fourth Amendment to the Constitution, the Supreme Court uniformly held, that the federal government may avail itself of evidence improperly seized by state officers operating *entirely* upon their own account. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520. It is settled that "these Amendments protect only against invasion of civil liberties by the Government whose conduct they alone limit." Feldman v. United States, 322 U.S. 487, 490, 64 S.Ct. 1082, 1083, 88 L.Ed. 1408.

In Byars v. United States, supra [273 U.S. 28, 47 S.Ct. 250], a state officer, acting under a state warrant to search for liquors, invited a federal officer to accompany him. The search resulted in the seizure of liquor by the state officers and of certain counterfeit stamps by the federal officer. The search warrant was clearly invalid under federal law. The Court, in a federal prosecution for possession of the counterfeit stamps, suppressed the evidence because of the "participation" of the federal agent, saying: "We do not question the right of the federal government to avail itself of evidence improperly seized by state officers operating *entirely* upon their own account. But the rule is otherwise when the federal government itself, through its agents acting as such, *participates* in the wrongful search and seizure." (Emphasis supplied.)

What constitutes "participation?" As pointed out in Byars v. United States, supra, the federal agent responded to the invitation, and *actively* "participated" in the search and seizure. The "participation" doctrine was extended to "co-operation" in Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 138, 72 L.Ed. 293. There, New York State troopers searched an automobile without a warrant, and without probable cause, and seized intoxicating liquors. The prisoners and property seized were immediately turned over to federal officers for prosecution in the federal courts. The New York State Liquor Law had been repealed and there was no duty imposed upon state officers, either by state or federal law, to enforce the National Prohibition Act, 27 U.S.C.A. § 1 et seq.; although the Governor of New York had declared that all state officers were required to aid in the enforcement of the federal law and such aid was accepted and acted on by federal officials. The Court says: "Evidence obtained through wrongful search and seizure by state officers who are co-operating with federal officials must be excluded." See Flagg v. United States, 2 Cir., 233 F. 481, 483, approved in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319. (Emphasis supplied.) [4]

4. In the Flagg case, 2 Cir. [233 F.2d at page 483], the acts constituting "co-operation" are not set out. It appears that unnamed persons seized certain records and immediately delivered them to federal officers who kept them for a year and a half, although a motion for their return was promptly made and overruled by the Court. The Circuit Court of Appeals stated, however, that there was "a presumption, well nigh conclusive, that the United States, whose agents took the books and papers into custody, and who alone was interested in prosecuting the defendant, was the party who *made* or *instigated* the unlawful seizure through its agents and servants." (Emphasis supplied.) Thus it appears that the "participation" in that case was *active*, and *instigated* by federal officers who thus became *principals* to the unlawful search and seizure.

Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319, is not helpful, other than for its approval of the principle laid down in the Flagg case that the government will not be allowed to avail itself of knowledge gained by its own wrong, i.e., "instigating" or *procuring* and *causing* others to make an unlawful search for them.

The Supreme Court held, however, that the State troopers were not *agents* of the United States and that the question to be decided was whether their *relation* to the federal prosecution was such as to require the exclusion of the evidence unlawfully obtained. The Court points out that *there was no suggestion that the defendants were committing or had committed any state offense* or that the troopers believed that they had; that no attempt was made to establish that the particular search was made in "co-operation with federal officials;" but that the state troopers believed that they were required by law to *aid in enforcing the National Prohibition Act*; "and that they made this arrest, search, and seizure, in the performance of that supposed duty, *solely for the purpose of aiding in the federal prosecution*"; that immediately after the arrest and seizure the defendants and the evidence were turned over to the federal officers.

In distinguishing earlier decisions (holding that evidence wrongfully secured by other than federal officers was admissible in federal prosecutions) the Court points out that in "none of those cases did it appear that the search and seizure was made *solely* for the purpose of *aiding the United States in the enforcement of its laws*."[5]

Decisions of a number of the Circuit Courts of Appeal have extended further the doctrine of "co-operation" where there was a custom amounting to an understanding that state cases would be tendered to federal officers for adoption. Fowler v. United States, 7 Cir., 62 F.2d 656, Lowrey v. United States, 8 Cir., 128 F.2d 477.

Ward v. United States, 5 Cir., 96 F.2d 189, by this circuit, cites, with approval, Fowler v. United States, supra. But in the Ward case the officer who made the arrest, search, and seizure, testified, positively and without contradiction, that he made it for a federal officer; that he told the federal officer that he would catch the defendant

and turn him over to him and the federal officer said, "okay."

In my opinion, these various Circuit Court opinions, all of which cite Byars v. United States and Gambino v. United States, overlook the basis for the Court's holding in the Gambino case—the fact that there the officers were not only acting pursuant to a supposed duty, an offer, and acceptance of that offer, to assist the federal officers in enforcing federal law (and not in an attempt to enforce state law), but solely *for the purpose of aiding in the enforcement of federal law*. This distinction *is* recognized in United States v. Butler, 10 Cir., 156 F.2d 897, where the Court found, with sustainable foundation, that the state officer was acting not for or in connection with the violation of any City Ordinance but *solely to aid in the enforcement of federal law*. Likewise in Gilbert v. United States, 10 Cir., 163 F.2d 325, where the trial court found that the local officer was not acting *solely for the purpose of aiding in the enforcement of federal law*. Cf. also Parker v. United States, 9 Cir., 183 F.2d 268.

The distinction is recognized, but decided adversely to my conclusions, in Sutherland v. United States, 4 Cir., 92 F.2d 305, 307 (Northcott dissenting). In that case, Judge Parker says: "* * * But we think that, where the state and federal officers have an understanding that the latter may prosecute in the federal courts offenses which the former discover in the course of their operations, and where the federal officers adopt a prosecution originated by state officers as the result of a search made by them, the same rule as to the admissibility of evidence obtained in the course of the search should be applied as if it were made by the federal officers themselves or under their direction. Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 138, 72 L.Ed. 293, 52 A.L.R. 1381. It is true that in the Gambino Case it is stated that the 'wrongful arrest, search, and

5. And further distinguishing Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, by pointing out that state law made criminal the acts with which the defendant was charged and *the seizure may have been in enforcing the state law*.

seizure were made solely on behalf of the United States'; but we do not think that this is sufficient to distinguish that case from this, where there was general co-operation between state and federal officers and where the federal officers in fact adopted the prosecution which the state officers had begun as a result of their search. It is the fact that there was such co-operation and adoption and not the fact that the search was made solely in behalf of the United States which in our opinion is the determining factor; for, whether the arrest, search, and seizure be made solely on behalf of the United States or not, it remains true that 'the rights guaranteed by the Fourth and Fifth Amendments may be invaded as effectively by such co-operation as by the state officers acting under direction of the federal officials.' "

But here Judge Parker overlooks the acts constituting "co-operation" in the Gambino case—the Governor and the Federal Prohibition Director calling on local officers to aid in arrests for violation of the federal law, the arrests "commonly made" by state troopers for federal, not state, violations. Cf. Kitt v. U. S., 4 Cir., 132 F.2d 920.

The true distinction, which most of the cases have failed to make, is pointed up, I think, in Lustig v. United States, 338 U.S. at page 74, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819. There a secret service officer was called by city officers and another to a hotel where it was suspected that counterfeiting was going on. After questioning the maid and peeping through the keyhole, the federal officer found no evidence of violation of federal law. He called in city officers, telling them that the subjects might be counterfeiting race track tickets in violation of state law.

The city officers searched and found evidence of currency counterfeiting. They called the secret service agent to the room before the search was completed. He "sifted" the evidence which later was used in the prosecution. The Court says: " * * * Had Greene accompanied the city police to the hotel, his participation could not be open to question even though the door of Room 402 had not been opened by him. See Johnson v. United States, 333

U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. To differentiate between participation from the beginning of an illegal search and joining it before it had run its course, would be to draw too fine a line in the application of the prohibition of the Fourth Amendment as interpreted in Byars v. United States supra, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520. The crux of that doctrine is that *a search is a search by a federal official if he had a hand in it; it is not a search by a federal official if evidence secured by state authorities is turned over to the federal authorities on a silver platter.* The decisive factor in determining the applicability of the Byars case is the *actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means.* It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress. So long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it. Where there is participation on the part of the federal officers it is not necessary to consider what would be the result if the search had been conducted entirely by State officers. Evidence secured through such federal participation is inadmissible for the same considerations as those which made Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, the governing principle in federal prosecutions." (Emphasis supplied.)

True, in the Lustig case, there was no claim of a "pattern" or prior understanding, although city officers originally had called the federal agent and he had called them back in. It is to be noted that the Court did not base its opinion (that the evidence was unlawfully secured) upon this prior "co-operation" but rather upon the *active* "participation" of the agent in the search before it was finished.

 Here, the city officers were arresting and searching for state offenses, some of which disclosed violations of both state and federal law. They were not acting *solely* for the *purpose of aiding in enforcement of federal law.* I think the evidence is admissible under both the Byars and

Gambino cases. In any event, I think the doctrine of "co-operation" between local and federal officers should be extended by the Supreme rather than the lower courts. The Supreme Court started out with "participation" in the Byars case; but there it was *active* "participation," with the federal officer present. "Co-operation"—a much broader term—crept into the opinion in the Gambino case in summarizing the decision in the Flagg case (in which federal officers *made* or *instigated* an unlawful, indefensible seizure and theft of papers). It is upon this one expression about "co-operation" that the various lower courts have seized to justify extension of *participation* to a *pattern*—overlooking that the basis for the Court's decision in the Gambino case was that the state troopers were acting, not to enforce state law, but *solely for the purpose of aiding in enforcement of federal law*.

Defendant's motion to suppress the evidence is overruled.

The clerk will notify counsel. A date will be fixed hereafter for defendant to be brought before the Court for verdict and sentence.