## Application of ROSS DEVELOPMENT CO., Inc.
### Bankr. No. 49076.

United States District Court
E. D. New York.
May 22, 1952.

See also D.C., 102 F.Supp. 753.

Samuel S. Bisgyer, Brooklyn, N. Y., for Trustee.

Norman Kemper, Brooklyn, N. Y., for Philip Lewis.

Max Schwartz, Brooklyn, N. Y., for Gen. Creditors Comm.

BYERS, District Judge.

These are cross motions to confirm the report of the Referee on the part of the petitioner and to disaffirm on the part of the trustee.

The subject matter of the report is a vendee's lien in the sum of $3,500., being the down payment by one Lewis in connection with a contract, dated January 23, 1950, for the purchase of Lot 2, Block 297 on a map of the debtor's property. The total price was $31,850., which included the real estate itself and the cost of a residence, which the vendor agreed to build thereon; title was to close on August 1, 1950.

The erection of the building, however, was never even begun by the debtor. The contract (namely, a memorandum thereof executed and acknowledged by the parties in accordance with the provisions of Section 294 of the Real Property Law of the State of New York, McK.Consol.Laws,

c. 50) was recorded in the Office of the Clerk of Nassau County on February 6, 1950. The vendor being completely in default on law day, Lewis instituted an action to foreclose his vendee's lien, and caused a lis pendens to be filed in the same office; seemingly no answer was interposed at any time.

On August 3, 1950, the debtor being in default as stated, David Ross, an officer and one of the two equal stockholders of the entire capital stock of the debtor, delivered to Lewis his personal check in the sum of $3,500., bearing this endorsement: "Deposit returned to Philip Lewis re Ross Development Co., Inc. Effective subject to payment."

That check was dishonored and was returned to the payee with the notation, "Insufficient Funds."

The Referee has found, and it is undisputed, that Lewis has never received back any part of his deposit.

Events subsequent to August 3, 1950, as found by the Referee, included an unsuccessful attempt on the part of Lewis to obtain a summons from a city magistrate in a proposed criminal proceeding presumably based upon the theory that when Ross drew the check he knew he was without funds to meet it. The issuance of such a summons was refused.

On September 11, 1950 Lewis brought a second action by the service of a summons with demand, against the debtor and the two Rosses, David and Leonard, for $5,-000. damages for breach of the said contract; seemingly no pleadings were filed in that suit; on that day stipulations were entered into between the respective attorneys (Trustee's Exhibit 13) and the Rosses individually and as the sole stockholders of the debtor, as follows:

Petitioner's (Lewis') Exhibit D refers to the action to foreclose the lien, and Trustee's Exhibit 13 refers to the second action for damages.

The substance of the former is that upon payment to the plaintiff of the sum of $3,-500. on or before October 18, 1950, a stipulation would be delivered to the defendant "consenting to the cancellation of the Notice of Pendancy (sic) heretofore filed" and to the "discontinuance of this action." Payment was to be made by certified check, and the consent and discontinuance were not to be delivered until that check should be paid.

The effect of that stipulation was clearly to keep alive the action to foreclose the lien until the agreed sum should have been paid, and that never took place.

The second stipulation provides for the settlement of the damage suit for the sum of $4,000., and upon payment thereof, the sum of $3,500. was to be credited "as a payment in the said action now pending" (referring to the action to foreclose the vendee's lien).

Both sides cite Flickinger v. Glass, 222 N.Y. 404, 118 N.E. 792. This seems to be the latest relevant decision of the Court of Appeals, and it is quite conclusive as to the effect to be given to the events above recited. The opinion 222 N.Y. at page 408, 118 N.E. at page 793, is in part:

"There is no inconsistency between an action to recover the payments made by a vendee and an action to declare them a lien upon the land. The two remedies are concurrent. The plaintiff, in suing through Whiting for the value of the groceries and fixtures, (roughly, the equivalent of the down payment on this contract of purchase) did not elect to treat the contract as void in its inception. * * * He concedes that a valid contract was made, and complains that the vendor is unable to perform it. * * * One may abandon a lien as vendor or as vendee by the acceptance of a new security. Maroney v. Boyle, 141 N.Y. 462, 467 36 N.E. 511. Even then the question is sometimes one of intention. Cordova v. Hood, 17 Wall. 1, 21 L.Ed. 587."

The foregoing is thought to be consistent with the view that the delivery of the check for $3,500. was compatible with the retention of the lien, even if it had been a check of the debtor.

It seems that this result must follow in view of the careful restriction embodied in the endorsement, that the return of the

deposit evidenced by the check was to be "effective subject to payment." The giving of the check by David Ross is not to be distinguished in principle from the transaction shown in Goldinger Realty Co. v. Stehr, 120 Misc. 329, 198 N.Y.S. 301, 302, where it was held that a vendor's lien was not lost through the acceptance of a note executed by the vendee's brother. The opinion says:

"The note was given for the defendant's (vendee's) benefit—not for the plaintiff's (vendor's) security. He is not really a third party, but was interested in the principal transaction. The acceptance of the note under the conditions shown was not a waiver of plaintiff's lien. Bennett v. Murphy, 123 App.Div. 102, 105, 108 N.Y.S. 231, affirmed, 195 N.Y. 553, 88 N.E. 1114. The plaintiff has not been paid the purchase price of its land, and the defendant is obligated therefor. In good conscience she should pay. The courts do not look with disfavor upon the enforcement of a vendor's lien. Flickinger v. Glass, 222 N.Y. 404, 118 N.E. 792."

Here we deal with a vendee's lien, and it would have been to the benefit of the vendee to accomplish the cancellation thereof.

The following cases: Maroney v. Boyle, 141 N.Y. 462, 36 N.E. 511; Hubbell v. Henrickson, 175 N.Y., 175, 67 N.E. 302; and Homeland Gardens v. Lennox, Sup., 106 N.Y.S.2d 741, deal with vendor's liens and the circumstances under which they are not deemed to have been waived.

■ There is no present escape from the conclusion that neither the above stipulations nor the receipt of the check for $3,500. were understood or intended by the parties to accomplish a waiver of this vendee's lien.

■ The second objection of the Trustee is that there is something inequitable about permitting Lewis to follow his lien into the proceeds of this particular lot, although the order of sale was framed so as to preserve that possible right.

The argument, if understood, relates back to the conditions existing when the Lewis contract was entered into and the provisions therein that the purchase price of $31,850. was payable:

As to $ 3,500.00 being the down payment;
$ 5,900.00 in installments as the building was supposed to approach completion;
$ 7,450.00 on closing of title; and
"$15,000.00 on closing of title and delivery of deed by payment to the Seller of the proceeds in that amount of a mortgage hereinafter referred to."

The clause dealing with the last named item is as follows:

"A. The Seller shall obtain a mortgage loan for the purchaser in the sum of $15,000.00. This mortgage shall be a permanent 20 year mortgage, payable in equal monthly installments, with interest at the rate of not more than 4% per annum."

Then follow appropriate provisions for anticipation of payments.

Paragraph "B" contemplates an alternate mortgage with interest at the rate of 4½%, and provides that in the event of failure to arrange for such a mortgage, the Seller is to refund all payments made by the purchaser and the contract shall "become cancelled, null and void and the parties hereto shall be relieved from further liability hereunder."

Since no such purchase money mortgage was arranged, the Trustee argues that Lewis (who had actual as well as constructive knowledge of the existence of the blanket mortgages about to be referred to) must be deemed to have entered into his contract and have made his down payment with notice thereof, and hence that the terms of these mortgages must be so visited upon him as to destroy or diminish the amount of his lien.

The mortgages were, respectively, a purchase money first mortgage in the sum of $197,500., and a second mortgage in the sum of $70,000., both of which covered the entire tract of the debtor's Sound View real estate, and were properly recorded prior to the date of the Lewis contract.

Those liens were in existence on the date of the auction sale of the premises which Lewis had contracted to buy, namely, May 3, 1951.

There was also a third blanket mortgage, recorded April 6, 1950, subsequent however to the date and record of the Lewis contract.

In order to make good title to the purchasers at the Trustee's auction sale, he paid out of the proceeds of the said several sales, to the first mortgagee $26,948.51, in exchange for which the latter executed releases of the mortgage lien as to twelve of the lots so sold by the Trustee, including that covered by the Lewis contract which was then purchased by one Seamon. The effect of this transaction was to reduce the mortgage debt to $40,000. which was then or thereafter assigned to the present holder, Parshelsky.

There was also paid to the holder of the second mortgage, Jamaica National Bank, $12,669.86, in exchange for which releases were executed of the lien of that mortgage as to eleven of the lots so sold, including the one described in the Lewis contract. It thus appears that in all $39,618.37 was paid for the releases to which reference has been made. As to this, the Trustee's brief states:

· "These payments were made without any allocation of amount either directly or indirectly by the orders providing for said payment or any agreement between the holder of the mortgage and the Trustee."

The net proceeds of the sale to Seamon, after deduction for taxes and revenue stamps, concededly amounted to $7,888.21. Seemingly the Trustee urges that this last mentioned sum, representing the net proceeds of the lot covered in the Lewis contract, should not be subjected to his vendee's lien, for the following reasons:

(1) When the contract was entered into the first and second mortgage liens were then in existence and since the releases of the liens of those mortgages with reference to the Lewis lot were not accomplished under the release provisions of those respective mortgages (as both were in de-

fault), the petitioner Lewis should stand in the same position as though they had never taken place at all; and that his lien, in the language of the Trustee's brief,

"should be evaluated as of the time of the filing of the petition. No proof has been offered to show that it had any value at that time, being subject to two blanket mortgages, one of them with a judgment of foreclosure and sale entered and notice of sale being published."

This argument I find it difficult to follow. The fact is that in order to effectuate the said public sale of certain of the debtor's property, including the lot in question, certain sums were paid to enable the Trustee to convey title, free from the liens of those respective mortgages; it seems, therefore, that the Court is required to deal with Lewis in the light of what actually took place.

This lien is sought to be distinguished from that of Megur, Application of Ross Development Co., D. C., 102 F.Supp. 753 in that:

"there was a fixed prearranged amount agreed upon as the consideration for the release of mortgage for that plot and it was so provided in the order confirming the Megur sale. In the case at bar, there is no such arrangement with the holder of the mortgage and no per plot allocation in the order confirming this sale. * * * It was only after the sale that a release arrangement was effected by the Trustee by reason of the fact that a large and important part of the property had not brought a sufficient price to warrant confirmation. The Trustee then arranged for a release of the eleven plots, including the plot here in question, and the assignment of the mortgage to another party. Having bought this plot with the prior mortgages on it, this claimant is bound thereby. There is no basis for the creation of an artificial convenient formula."

The foregoing has to do with the first mortgage and a like comment is made concerning the second. Again, the brief says:

"The Trustee submits that it would be purely arbitrary and without any

basis in law or in fact to divide the sum of $26,948.51 by 12 and conclude that the resulting sum, $2,245.71, is the proper sum to be allocated to the release of the one plot originally sold to this claimant."

That again refers to the first mortgage. Obviously, the same argument as to the adoption of an artificial convenient formula would apply to the release from the lien of the second mortgage.

That reasoning seems to avoid the realities of the situation. Since the release of the lien of the first mortgage as to 12 plots was accomplished by the payment of $26,948.51 and from the lien of the second mortgage by the payment of $12,669.86, and since there is no evidence these figures evolved themselves, it necessarily follows that they were negotiated, which means that if the basis of the supporting computations was variable, so that a given sum applied to one lot and a different sum to another, evidence to that effect would appear in the record for the guidance of the Referee and the Court; there being none, the inequitable consequence of dividing one sum by twelve and the other by eleven, so as to compute the contributions made by this particular lot (i. e., the proceeds thereof) to the extinguishment of these two liens which were prior to that of the vendee's lien, has completely concealed itself so far as this Court is concerned. In principle, no difference is observed between computations for release purposes, made before and after the sale.

Sight has not been lost of the argument directed against the Referee's report, which reads as follows:

"The Trustee, administering this estate for the benefit of all creditors * * * made this arrangement with the bank (and also with the holder of the first mortgage) and thus saddled the remainder of the debtor's land with the balance of the mortgage debt. It was made not for the sole benefit of this claimant at the expense of the rest of the creditors. It was made to enable the Trustee to close the titles to the lands sold at auction."

The effort has been made in the Megur case to deal with this argument, there stated in somewhat different form, by pointing out that these were both blanket mortgages, which means that the lien of each covered the entire property. It was believed that the sale of so much of this tract as the market was ready to absorb, would necessarily enhance the value of the remaining portion, and thus render that of greater value for ultimate disposition; if that theory was sound, the security for the liens on the unsold property would be necessarily enhanced which would, of course, inured to the benefit of the general creditors.

That theory may not have been vindicated by the results accomplished thus far, but it has not been shown to be falsely reasoned merely because a sufficient demand has not yet manifested itself for so much of the debtor's real estate as remains unliquidated.

It is to be remembered that the validity in the legal sense, of either the Megur or the Lewis liens has not been attacked; nor has an effort been made to show that they should not be recognized and enforced in this proceeding.

Moreover, I can find no reason for holding it to be inequitable to give such a vendee's lien its place in the order of succession to the mortgage liens; while it is not a loan secured by specific land, it is part of the purchase price thereof and the law clothes it with a special property in that land, if a correct understanding has been brought to bear in the adjudication of these claims. If there has been error, it is subject to correction on appeal.

It results that no sufficient reason has been shown, in the judgment of this Court, to disagree with the report and the recommendation of the Referee, and accordingly, the motion to confirm is granted and the motion to disaffirm is denied. Settle order.