**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Chester Albert CLARKE, Sr., Defendant-Appellant.**

**No. 71–2017
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Nov. 11, 1971.

Rehearing Denied Dec. 7, 1971.

* [1] Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Paul B. Johnson, Tampa, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., William M. James, Jr., Tampa, Fla., for plaintiff-appellee.

Before BELL, AINSWORTH, and GODBOLD, Circuit Judges.

BELL, Circuit Judge:

This appeal is from conviction on an indictment charging appellant with aiding and abetting in the forging and passing of two United States Treasury Bonds, in violation of Title 18, USCA, §§ 2 and 495. We reverse.

The record discloses that during September, 1966, the Belle State Bank in Belle, Missouri, was burglarized. Among the items stolen were two $1,000 United States Treasury Bonds, a certificate representing 100 shares of R. J. Reynolds Tobacco stock, and two certificates representing, respectively, 100 shares and 20 shares of Canada Dry stock.

Appellant was charged with aiding and abetting the forging and passing of the treasury bonds. However, in an effort to link appellant with the burglary of the Belle State Bank and to establish scienter in the aiding and abetting charge, testimony concerning the R. J. Reynolds and Canada Dry stock certificates was introduced by the government. It appears that these certificates had been seized in appellant's home and the question presented is whether this seizure was in violation of the Fourth Amendment to the Constitution.

The certificates in question came to light in a most unusual way. Appellant resided in Sebring, Florida in a home formerly occupied by his father. Appellant was out of the state and ill at the time; the father and the father's wife (appellant's stepmother) were in Georgia. The stepmother contacted appellant's son-in-law with the request that he enter appellant's home for the purpose of obtaining and forwarding certain stock certificates owned by the father to her in Georgia. The son-in-law by happenstance was a deputy sheriff in Sebring, Florida. He had a key to the home which had been turned over to him some years earlier by appellant's father.

The son-in-law (deputy sheriff) suspected, based on a report from a witness, that appellant was engaged in illegal activities in connection with stock certificates or bonds which he did not own. Moreover, the deputy testified that at the time he believed that appellant was in possession of stolen property—not otherwise defined.

The deputy sheriff went to the unoccupied home for the stock certificates as requested. While there he undertook a side venture of looking behind a mirror and there discovered the R. J. Reynolds and Canada Dry certificates which are in issue.

He thereupon removed the certificates from the home, made Xerox copies of them which he placed in his locked evidence locker at the county jail, and returned the originals to the home. Approximately a week later, he made the copies available to the Federal Bureau of Investigation which used them in its investigation of appellant. At the trial

**586**

and over objection, an FBI agent and the deputy testified concerning the certificates and the copies made available by the deputy and this is the testimony which gives rise to the question. The district court ruled that this evidence was obtained by the son-in-law in his family or private capacity and not as a law enforcement officer. We reverse.

■ Our study of the record leads us to the conclusion that under these circumstances this evidence was uncovered through a search [1] and subsequent seizure, and that the deputy was acting in his capacity as a law enforcement officer, rather than exclusively as a son-in-law on a family mission. The trial court's finding to the contrary is clearly erroneous.

■ The case of Elkins v. United States, 364 U.S. 206, 223, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669, 1681, (1960), teaches that " * * * evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial."

■ The evidence seized from appellant's home was taken without the benefit of a search warrant. We hold that absent a search warrant, in view of the appertaining circumstances, the search and resulting seizure of the certificates violated the Fourth Amendment. Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). It was prejudicial error to admit the evidence in question. It follows that the case must be reversed.

The other errors assigned having to do with discovery and hearsay testimony are without merit.

Reversed and remanded for further proceedings not inconsistent herewith.

---

1. A search may be defined in this case as " * * * an examination of one's premises * * * with a view to the discovery of contraband or evidence * * * to be used in prosecution of a criminal action. The term implies exploratory investigation or quest." Haerr v. United States, 5 Cir. 1957, 240 F.2d 533, 535.