Gibson, J.,
dissenting. I concur with the majority that, under well established law, the search of defendant and the seizure of the packet of clearinghouse slips, all without a warrant, were lawful if the search and seizure followed a valid arrest. The right to search the person incident to arrest always has been recognized in this country and in England. Weeks v. United States (1914), 232 U. S., 383, 392; United States v. Rabinowits *78 (1950), 339 U. S., 56. But the validity of the search and seizure without a warrant after an arrest is dependent upon the arrest being valid.
Defendant was arrested without a warrant; hence, the inquiry must turn to whether such arrest was lawful. The Fourth Amendment to the Constitution of the United States and similar provisions of state constitutions, e. g., Section 14, Article I, Ohio Constitution, do not prohibit arrest without a warrant. 6 Corpus Juris Secundum, 579, Arrest, Section 5. The right to arrest without a warrant turns upon (1) the nature of the offense, i. e., whether felony or misdemeanor, and (2) the status of the arrestor, i. e., whether peace officer or citizen. See Sections 2935.03 and 2935.04, Revised Code. In this instance the arrest was made by a police officer, so our inquiry is limited to the right of an officer to make an arrest without a warrant.
Since the rules governing an officer’s right to arrest without a warrant vary with the nature of the crime, consideration should be given to whether the crime for which the arrest was made was a felony or a misdemeanor. The arresting officer testified that at 1:00 p. m. on November 10, 1961, he placed the defendant “under arrest for a clearing house operation, scheme of chance.” On November 13, 1961, an affidavit was executed by a police officer charging defendant under Section 2915.111, Revised Code, with the possession of a certain quantity of clearinghouse slips. The warrant issued thereon probably charged a violation of Section 2915.111, although the record is not entirely clear on this point, since the deputy clerk issuing the warrant apparently attempted to adapt a form charging a violation of the municipal code.
The arresting officer testified that when he arrested defendant he (the officer) was “under a belief that a felony had been committed under the state law, carrying on a scheme of chance is a felony. ’ ’ In my opinion, however, his conclusion as to whether he was arresting defendant for a felony is not determinative. Mere honesty and good faith on the part of the arresting officer are not enough. There must also be reasonable grounds for believing that the person arrested has committed an act constituting a felony. I Harper and James, The Law of Torts, 275, Section 3.18.
*79 Several factors should be considered in determining whether the officer had reasonable grounds for believing that the defendant might be guilty of a felony. The factors include the statute which was violated and the circumstances existing at the time of the arrest and thereafter.
Consideration first should be given to the penalty provision of Section 2915.111, Revised Ccjde, which reads as follows:
‘‘Whoever violates this section shall be fined not more than five hundred dollars and imprisoned not more than six months for a first offense; for each subsequent offense, such person shall be fined not less than five hundred nor more than one thousand dollars and imprisoned not less than one nor more than three years. ’ ’ It has been held that a crime which may be punishable by imprisonment in the penitentiary or in a jail at the discretion of the court is a felony. McKelvy v. State (1912), 87 Ohio St., 1, 7; Seaman v. State (1922), 106 Ohio St., 177, 179. It is to be noted, however, that in this case the court has no discretion. The statute clearly makes the first offense a misdemeanor and subsequent offenses felonies.
Consideration should also be given to the circumstances at the time of the defendant’s arrest and thereafter. These circumstances must be taken to be as stated by a single Cleveland police officer called to testify on the defendant’s motion to suppress evidence, since as stated in the record there is no other evidence before this court. The officer testified that when he left the police station on November 10, 1961, he had a police picture of defendant, knew of three arrests of defendant in 1959 for clearinghouse operations,* had received information from an informer (whose identity he would not reveal) and *80 “had in mind looting for him [defendant] in the area of East 115th Street and Beulah.” A few minutes before 1:00 that afternoon, he first saw defendant driving his automobile lawfully north on East 115th Street. The officer and other officers identified themselves and requested defendant to pull over to the curb as he turned east on Beulah. The officer admitted that defendant was not stopped for any traffic offense.
After defendant stopped, apparently the arresting officer and other officers searched his automobile. The arresting officer testified that while defendant’s ear was being searched, “I placed him [defendant] under arrest for a clearing house operation, scheme of chance.” This occurred at 1:00 p. m. on November 10, 1961. The officer also testified that the search of the automobile disclosed nothing other than a hunting knife. Defendant then was taken to the Fifth District Police Station where his person was searched. During this search an envelope of clearinghouse slips was found “beneath the sock of [sic] his leg.”
Defendant was arraigned in the Cleveland Municipal Court on November 13, 1961, and entered a plea of not guilty. Thereafter on December 4, 1961, defendant filed a motion to suppress the policy slips seized and “all conversations after said illegal arrest,” on the ground that the “arrest, search and seizure was without authority, unwarranted, illegal, unreasonable, unconstitutionally [sic] and void in that it violates the Fourth Amendment of the Constitution of the United States and the use of any property seized as alleged evidence infringes upon the privilege against self-incrimination, as guaranteed by the Fifth Amendment to the Constitution of the United States.”
Following a hearing on the motion, which was denied, it was stipulated that the evidence presented on the motion would be the same as would be presented at the trial of the cause. The court thereupon found defendant guilty and he was sentenced to pay a fine of $500 and the costs.
*81 From the recital of facts surrounding the arrest and subsequent events, it is apparent that the opinion of the complaining witness, the police prosecutor and the Cleveland Municipal Court was that “a subsequent offense” does not exist so as to make an accused guilty of a felony unless the accused had earlier been convicted of violating Section 2915.111. In other words, the mere fact that defendant in this case may have been arrested on previous occasions for possible violations of Section 2915.111 did not make the arrest on November 10, 1961, one for a felony.
Notwithstanding the stated belief of the arresting officer, in view of the provisions of the statute under which the defendant was charged and circumstances existing at the time of his arrest and thereafter, it seems clear that the defendant was arrested in this case for a misdemeanor, the validity of which arrest must be determined under Section 293'5.03, Revised Code.
Consistent with the heading that “Officer may arrest on view,” Section 2935.03, Revised Code, provides in pertinent part:
“A * * * police officer shall arrest and detain a person found violating a laiv of this state, or an ordinance of a municipal corporation, until a warrant can be obtained.” (Emphasis supplied.) Since Section 2935.04, Revised Code, is expressly limited to the right to arrest a felon without a warrant, it is obvious that the above-quoted statute states the rule relative to the right of named peace officers to arrest misdemeanants without warrants. In my opinion the phraseology “found violating a law of this state, or an ordinance of a municipal corporation” is the equivalent of the more usual rubric, viz., a “crime committed in the presence” of an officer.
As a rule, for a misdemeanor to be committed in the presence of an officer, the facts or elements constituting the offense must be revealed in the presence of the officer and the officer must perceive that the offense is being committed. The offense is committed in the presence or view of the officer when the officer receives knowledge of the commission of the offense through any of his senses, or by inferences properly to be drawn from the testimony of his senses. Accordingly, where through the sense of sight, or smell, or hearing, the officer receives knowledge that a misdemeanor is being committed in his presence *82 he may arrest the offender without a warrant. 6 Corpus Juris Secundum 580, 582, Arrest, Section 5.
In many types of crimes the suspect is actively doing something, such as breaking, entering, brandishing a knife, burning property, striking an antagonist, or using profane language, which the officer can see, hear, or smell. The violation of law occurring at the time of the defendant’s arrest here, however, consisted solely of his having custody or control of a packet of clearinghouse slips under his sock and inside his trousers. Obviously, the officer could neither see, hear nor smell the packet which was unlawfully possessed. In my opinion this misdemeanor was not committed in the presence of the police officer, or, in the terms of the statute, the defendant was not “ found violating a law of this state” by the officer, thereby justifying the arrest without a warrant.
To avoid any misunderstanding, I do not assert that the act of possessing contraband materials never can be committed in the presence of an officer. Obviously, if the officer were to see the clearinghouse slips in the hand of the suspect or enough of the slip protruding above a pocket of the suspect to identify it as a clearinghouse slip, the crime of possessing clearinghouse tickets would be committed in his presence.
The problem here is to strike a balance between the public interest in the prevention of crime and the speedy apprehension of criminals and the interest of the individual in freedom from interference at the hands of the law. Nothing I have said should be taken as condoning the activities of this defendant. But, regardless of the conduct of this defendant, I am firmly convinced that the due-process requirements of the common law and constitutional provisions are not to be overlooked. The court must protect the fundamental rights of its citizens even though in doing so the guilty may at times escape punishment. This is the price which a free society must pay to protect its freedom. We can not ignore the rights of some of the people without doing violence to the rights of all.
There is no place today for a procedure by which a police officer can justify an arrest by the results of his unlawful search and seizure. In other words, an unlawful arrest may not be made legal by the contraband seized. The end can not justify the means.
*83 Particularly important in the instant case are the facts that the courthouse was open and that the arresting officer, knowing that he was “looking for him [defendant] in the area of East 115th Street and Beulah,” had ample time in which to secure a warrant. There is no indication that the arrest was made without a warrant in order to prevent a threatened escape.
Under all the circumstances of this case, I believe that the arrest was unlawful. Hence the search and seizure was unreasonable and in contravention of the Fourth Amendment of the Constitution of the United States and Section 14, Article I of the Ohio Constitution. Accordingly, the ruling of Mapp v. Ohio (1961), 367 U. S., 643, requires that the judgment of the Court of Appeals in this case should be reversed and the cause remanded for further proceedings without the use of evidence obtained by the unlawful search and seizure.
Taft, C. J., concurs in the foregoing dissenting opinion.

The majority opinion asserts that there was testimony that the defendant had previously been convicted of carrying on a scheme of chance involving clearinghouse slips. Although the arresting officer on direct examination testified that defendant had previous convictions, a careful examination of the testimony shows that he did not clearly indicate what the previous convictions were for. In view of what occurred after the arrest and search and seizure, the logical conclusion is that if the convictions were for clearinghouse-slip violations they were convictions under the Cleveland Municipal Code and not under Section 2915.111, Revised Code. Had they been under the state statute, the prosecuting authorities undoubtedly would have taken advantage of the subsequent offense provision of the statute.
*80 It also should be noted that the arresting officer on redirect examination testified as follows:
“Q. You indicated that you knew of Mr. Beck’s previous record? A. Yes, I did.
“Q. What was that, sir? A. Three arrests for clearing house violations.
“Q. When was this? A. They were all during the year 1959, I believe,”