**AMERICAN SAMOA GOVERNMENT, Plaintiff,**

**v.**

**ALFRED FAUMUINA, Defendant.**

High Court of American Samoa
Trial Division

CR No. 8-97

October 21, 1999

Before RICHMOND, Associate Justice, ATIULAGI, *Associate* Judge

Counsel: For Plaintiff, John W. Cassell, Assistant Attorney General
      For Defendant, Aitofele T. Sunia

## ORDER DENYING MOTION TO SUPPRESS EVIDENCE

On July 23, 1997, defendant Alfred Faumuina[1] ("Faumuina") was placed on probation for two years for his conviction of assault in the third degree, a class A misdemeanor. As one condition of his probation, Faumuina must be a law-abiding citizen. On June 25, 1999, his probation officer filed an affidavit to initiate probation revocation proceedings, alleging that on June 24, 1999, Faumuina unlawfully possessed a 9mm handgun ('the handgun").

Plaintiff American Samoa Government ("ASG") commenced prosecution of Faumuina for unlawful use of a weapon, by knowingly carrying the handgun concealed on his person, a class 13 felony. The information charging this offense, in CR No. 48-99, was filed on July 12, 1999. Faumuina's motion to suppress evidence in that action is pending.

We found probable cause to proceed with the probation revocation proceeding on July 12, 1999. During the subsequent formal evidentiary hearing on July 30, 1999, Faumuina objected to the introduction of the handgun, and the ammunition found with it, on the grounds that this evidence was the product of an unlawful search and seizure. We invited the parties to brief the issue, and took the unreasonable search and seizure evidentiary issue and the probation violation determination under advisement.

## Facts

During the morning of June 24, 1999, an ASG team, including police Lieutenant Vaito`elau Laumoli ("LT Laumoli") and Detective Sergeant Ta`ase Sagapolutele ("SGT Sagapolutele"), inspected various premises for the presence of illegal poker machines. At the market place in Fagatogo, the team confiscated machines believed to belong to Faumuina. Faumuina came to this site while the process was in progress

---

[1] Alfred Faumuina is the same person as Poe Faumuina, the named defendant in CR No. 48-99. Identity is not at issue in either case.

and acted with displeasure over the seizure of these machines. Faumuina and other private citizens then followed and observed the activities of the team at several other locations in the Pago Pago Bay area.

The search and seizure in question took place outside of a building in Aua. While SGT Sagapolutele waited outside in the police unit, LT Laumoli and other team members went inside the building. Faumuina and another citizen began to follow LT Laumoli's group into the building. LT Laumoli then asked Faumuina and his immediate companion to leave the area so as to not disrupt the team's inspection. Faumuina and his companion apparently acceded to this request. However, SGT Sagapolutele had stepped out of the vehicle and was approaching Faumuina.

When SGT Sagapolutele was within approximately three yards of Faumuina, he noticed what appeared to be the outline of a handgun in the waist pouch on Faumuina's person. Closing to within a couple of feet of Faumuina, SGT Sagapolutele discerned the gleam of metallic objects that looked like the tips of loose bullets inside the pouch. SGT Sagapolutele asked Faumuina about the contents of the pouch, and Faumuina did not reply.

At this point, SGT Sagapolutele was concerned that Faumuina was armed and potentially dangerous, and he reached to pat down the waist pouch. Faumuina twisted to away as if to prevent the contact. SGT Sagapolutele was still able to touch the pouch and felt a hard object which he believed could be a handgun. SGT Sagapolutele then held Faumuina, opened the pouch, and discovered the loaded handgun. Loose bullets for the handgun were also in the pouch.

Faumuina seeks to suppress the handgun and bullets on the ground that the search was not lawful because SGT Sagapolutele did not have reasonable suspicion sufficient to justify the search. Faumuina also wants his statements to the police suppressed.

## Discussion

Mirroring its federal counterpart in the Fourth Amendment, Article 1, Section 5 of the Revised Constitution of American Samoa states that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." Under the rule of exclusion, items seized illegally may be suppressed upon a timely motion. *Weeks v. United States,* 232 U.S. 383 (1914). Moreover, Article 1, Section 5 of the Revised Constitution of American Samoa explicitly states that "[e]vidence obtained in violation of this section shall not be admitted in any court." This search was not made pursuant to a warrant and was therefore unlawful unless an exception exists to

justify it. We agree with ASG that a *"Terry* stop and frisk" constitutes such an exception in this case.

■ In *Terry v. Ohio,* 392 U.S. 1 (1968), the Supreme Court defined a "frisk" as "measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." The Court determined that a frisk constitutes a search within the meaning of the Fourth Amendment that must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby."

SOT Sagapolutele's search falls within this definition of a frisk. He opened Faumuina's waist pouch to determine whether Faumuina was carrying a handgun, and if so, to neutralize any threat the firearm might pose. SGT Sagapolutele only searched Faumuina's pouch in which the handgun and bullets were in fact located. The search was thus limited to discovering ready weapons on Faumuina's person.

■ Justification for a frisk requires two elements. First, the search must be reasonably related in scope to the circumstances. SGT Sagapolutele searched only the waist pouch in which he believed the handgun and ammunition to be located, satisfying this element.

■ Second, the search must be justified at its inception. Two factors play into whether a frisk is justified at its inception. First, the law enforcement officer must be rightfully in the presence of the party frisked. This is not an issue here, because Faumuina put himself in the presence of the officer.

■ Second, the law enforcement officer must suspect that the party *may* be armed and dangerous. Use of the word *may* indicates that this standard is quite low, and considerable deference is afforded law enforcement authorities in this determination. As stated in *United States v. Montoya de Hernandez,* 473 U.S. 531,541 (1985), this standard is a good deal lower than that of probable cause. The Supreme Court further elucidated this standard in *Ybarra v. Illinois,* 444 U.S. 85 (1979), wherein it stated that *Terry* "created an exception to the requirement of probable cause" whereby "a law enforcement officer, for his own protection and safety, may conduct a pat-down to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted."

SGT Sagapolutele's testimony indicated a reasonable suspicion that Faumuina was armed, having seen what appeared to be a handgun in Faumuina's waist pouch. From the circumstances of the day in question, the sergeant could also have reasonably believed Faumuina to be dangerous. Faumuina was displeased at having poker machines seized

earlier at the Fagatogo market place and persistently followed the team carrying out the inspections for other illegal machines.

■ Even if Faumuina was acting innocently, however, a frisk was justified in this instance. *People v. Prochilo,* 363 N.E.2d 1380 (1977) held that a frisk was proper where the outline of a gun was visible through clothing, because an arrest and search on probable cause of carrying a concealed weapon could have been made. The situation here is almost identical, because SOT Sagapolutele could have immediately arrested and searched Faumuina on suspicion of carrying a concealed firearm in violation of A.S.C.A. § 46.4203 (a)(1). In addition, the court in *United States v. $84,000 U.S. Currency,* 717 F.2d 1090 (7th Cir. 1983) held that a law enforcement officer could properly frisk a person voluntarily accompanying him to the airport upon observing a suspicious bulge in that person's clothing. In this case, Faumuina was in the presence of the police officers voluntarily and the handgun made an obvious bulge in the Faumuina's waist pouch.

The importance accorded police safety by the courts also argues for the lawfulness of the search. According to the Supreme Court, "the State's proffered justification—the safety of the officer—is both legitimate and weighty. 'Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.'" *Pennsylvania v. Mimms,* 434 U.S. 106 (1977). This policy rationale applies equally here. There is no justification for requiring SGT Sagapolutele to risk his life and the lives of fellow officers and civilian team members because he could not be sure whether Faumuina was displeased enough to use the handgun.

■ Faumuina also rhetorically questions the purpose or legitimacy of the second pat down the police officers made of his person after Faumuina was arrested and handcuffed. The officers were justified in conducting this pat down because a protective search is permissible after a suspect is handcuffed. '[I]t is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person,' and the suspect may in any event be able to access a weapon concealed on his person once the handcuffs are removed. *United States v. Sanders,* 994 F.2d 200 (5th Cir. 1993)

## Conclusion and Order

For the foregoing reasons, we conclude that the seizure of the handgun and ammunition in this case was proper as a *"Terry* stop and frisk." Therefore, Faumuina's motion to suppress the handgun and ammunition is denied, and these items are admitted into evidence.

We will, however, postpone making the formal decision on the probation

violation until the trial in CR No. 48-99 is concluded.

It is so ordered.

