**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**POE FAUMUINA, Defendant**

High Court of American Samoa
Trial Division

CR No. 48-99

October 21, 1999

Before RICHMOND, Associate Justice, LOGOAI, Associate Judge.

Counsel: For Plaintiff, John W. Cassell, Assistant Attorney General
 For Defendant, Aitofele T. Sunia

## ORDER DENYING MOTION TO SUPPRESS EVIDENCE

On July 12, 1999, plaintiff American Samoa Government (ASGU) filed the information in this action, charging defendant Poe Faumuina[1] ("Faumuina") with the crime of unlawful use of a weapon, by knowingly carrying a 9mm handgun ("the handgun") concealed on his person, a class D felony.

Faumuina moved to suppress the handgun and ammunition seized. by, and his statements to, the police. The court heard this motion on October 4, 1999. Faumuina's alleged possession of the handgun is also the basis for probation revocation proceedings in CR No. 8-97. Thus, for purposes of the present motion, in addition to the testimony then taken on October 4, we took judicial notice of the testimony taken and evidence offered at the probation revocation hearing on July 30, 1999.

### Facts

During the morning of June 24, 1999, an ASG team, including police Lieutenant Vaito`elau Laumoli ("LT Laumoli") and Detective Sergeant Ta`ase Sagapolutele ("SGT Sagapolutele"), inspected various premises for the presence of illegal poker machines. At the market place in Fagatogo, the team confiscated machines believed to belong to Faumuina. Faumuina came to this site while the process was in progress and acted with displeasure over the seizure of these machines. Faumuina and other private citizens then followed and observed the activities of the team at several other locations in the Pago Pago Bay area.

The search and seizure in question took place outside of a building in Aua. While SGT Sagapolutele waited outside in the police unit, LT Laumoli and other team members went inside the building. Faumuina and another citizen began to follow LT Laumoli's group into the building. LT Laumoli then asked Faumuina and his immediate companion to leave the area so as to not disrupt the team's inspection. Faumuina and his companion apparently acceded to this request. SGT

---

[1] Poe Faumuina is the same person as Alfred Faumuina, the named defendant in CR No. 8-97. Identity is not at issue in either case.

Sagapolutele then stepped out of the police vehicle and approached Faumuina.

When SGT Sagapolutele was within approximately three yards of Faumuina, he noticed what appeared to be the outline of a handgun in the waist pouch on Faumuina's person. Closing to within a couple of feet of Faumuina, SGT Sagapolutele discerned the gleam of metallic objects that looked like the tips of loose bullets inside the pouch. SGT Sagapolutele asked Faumuina about the contents of the pouch, and Faumuina did not reply.

At this point, SGT Sagapolutele was concerned that Faumuina was armed and potentially dangerous, and he reached to pat down the waist pouch. Faumuina twisted away as if to prevent the contact. SGT Sagapolutele was still able to touch the pouch and felt a hard object which he believed could be a handgun. SGT Sagapolutele then held Faumuina, opened the pouch, and discovered the loaded handgun. Loose bullets for the handgun were also in the pouch.

Faumuina seeks to suppress the gun and bullets on the ground that the search was not lawful because SGT Sagapolutele did not have reasonable suspicion sufficient to justify the search. Faumuina also wants his statements to the police suppressed.

### Discussion

Mirroring its federal counterpart in the Fourth Amendment, Article 1, Section 5 of the Revised Constitution of American Samoa states that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ." Under the rule of exclusion, items seized illegally may be suppressed upon a timely motion. *Weeks v. United States,* 232 U.S. 383 (1914). Moreover, Article 1, Section 5 of the Revised Constitution of American Samoa explicitly states that "[e]vidence obtained in violation of this section shall not be admitted in any court." This search was not made pursuant to a warrant and was therefore unlawful unless an exception exists to justify it. We agree with ASG that a *"Terry* stop and frisk" constitutes such an exception in this case.

In *Terry v. Ohio,* 392 U.S. 1 (1968), the Supreme Court defined a "frisk" as "measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." The Court determined that a frisk constitutes a search within the meaning of the Fourth Amendment that must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby."

SGT Sagapolutele's search falls within this definition of a frisk. He opened Faumuina's waist pouch to determine whether Faumuina was carrying a handgun, and if so, to neutralize any threat the firearm might pose. SGT Sagapolutele only searched Faumuina's pouch in which the handgun and bullets were in fact located. The search was thus limited to discovering weapons on Faumuina's person.

█ Justification for a frisk requires two elements. First, the search must be reasonably related in scope to the circumstances. SGT Sagapolutele searched only the waist pouch in which he believed a handgun and ammunition to be located, satisfying this element. Second, the search must be justified at its inception.

█ Two factors play into whether a frisk is justified at its inception. First, the law enforcement officer must be rightfully in the presence of the party frisked. This is not an issue here, because Faumuina put himself in the presence of the officer. Second, the law enforcement officer must suspect that the party *may* be armed and dangerous. Use of the word *may* indicates that this standard is quite low, and considerable deference is afforded law enforcement authorities in this determination. As stated in *United States v. Montoya de Hernandez,* 473 U.S. 531,541 (1985), this standard is a good deal lower than that of probable cause. The Supreme Court further elucidated this standard in *Ybarra v. Illinois,* 444 U.S. 85 (1979), wherein it stated that *Terry* "created an exception to the requirement of probable cause" whereby "a law enforcement officer, for his own protection and safety, may conduct a pat-down to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted."

SGT Sagapolutele's testimony indicated a reasonable suspicion that Faumuina was armed, having seen what appeared to be a handgun in Faumuina's waist pouch. From the circumstances of the day in question, SGT Sagapolutele could also have reasonably believed Faumuina to be dangerous. Faumuina was displeased at having poker machines seized earlier at the Fagatogo market place and persistently followed the team carrying out the inspections for other illegal machines.

Even if Faumuina was acting innocently, however, a frisk was justified in this instance. *People v. Prochilo,* 363 N.E.2d 1380 (1977) held that a frisk was proper where the outline of a gun was visible through clothing, because an arrest and search on probable cause of carrying a concealed weapon could have been made. The situation here is almost identical, because SGT Sagapolutele could have immediately arrested and searched Faumuina on suspicion of carrying a concealed firearm in violation of A.S.C.A § 46.4203 (a)(1). In addition, the court in *United States v. $84,000 U.S. Currency,* 717 F.2d 1090 (7th Cir. 1983) held that a law enforcement officer could properly frisk a person voluntarily

accompanying him to the airport upon observing a suspicious bulge in that person's clothing. In this case, Faumuina was in the presence of the police officers voluntarily and the handgun made an obvious bulge in Faumuina's waist pouch.

The importance accorded police safety by the courts also argues for the lawfulness of the search. According to the Supreme Court, "the State's proffered justification—the safety of the officer—is both legitimate and weighty. 'Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.'" *Pennsylvania v. Mimms,* 434 U.S. 106 (1977). This policy rationale applies equally here. There is no justification for requiring SGT Sagapolutele to risk his life and the lives of his fellow officer and civilian team members because he could not be sure whether Faumuina was displeased enough to use the handgun.

■ Faumuina also rhetorically questions the purpose or legitimacy of the second patdown the police officers made of his person after Faumuina was arrested and handcuffed. The officers were justified in this patdown because a protective search is permissible after the suspect is handcuffed. "[I]t is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person," and the suspect may in any event be able to access a weapon concealed on his person once the handcuffs are removed. *United States v. Sanders,* 994 F.2d 200 (5th Cir. 1993).

Lastly, we point out that the evidence adduced on the motion to suppress evidence did not address any statements made by Faumuina in response to custodial interrogation. The only evidence of any relevant statement was Faumuina's silence when he was asked about the contents of his waist pouch. Clearly, he was not in custody at this juncture. The interpretative weight of this evidence may be debated, but not its admissibility.

## Conclusion and Order

For the foregoing reasons, we conclude that the seizure of the handgun and ammunition in this case was proper as a *"Terry* stop and frisk," and that no custodial statements were involved. Therefore, Faumuinia's motion to suppress the physical evidence and statements is denied.

It is so ordered.