THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
RONALD OSMAN, a/k/a Arthur Larson, Defendant-Appellee.

First District (4th Division)    No. 76-1382

Opinion filed August 4, 1977.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Paul B.
Linton, Assistant State's Attorneys, of counsel), for the People.

James W. Reilley, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the
court:

This is an appeal by the People of the State of Illinois of an order of the
circuit court of Cook County granting a motion to quash arrest and to
suppress evidence filed by Ronald Osman (hereinafter called
"defendant"). Defendant was charged with unlawful use of weapons and
unlawful use of weapons within five years of release from the Illinois State
Penitentiary following his conviction of voluntary manslaughter.

The issue presented for review is whether the conduct of the arresting
officer in stopping and frisking the defendant violated the United States
Constitution's Fourth Amendment proscription against unreasonable
searches and seizures.

On November 13, 1975, Cook County Sheriff's Department Assistant
Director Barry W. Levy had dinner with Investigator Arthur Le
Tourneau, Internal Affairs Division, Cook County Sheriff's Department,
at Don's Fishmarket, located at 9333 Skokie Blvd., in Skokie, Illinois. Both

men were in plain clothes. At about 9:30 p.m., Levy and Le Tourneau left the restaurant and walked to their squad car in the west portion of the parking lot. When they reached their car, Officer Levy observed a man later identified as Frank Mamoella run through the motel office adjacent to the restaurant, out into the parking lot, and up to a parked vehicle. Mamoella approached a red 1968 Cadillac in the south portion of the parking lot, opened the trunk, reached in and removed an automatic weapon which he placed in his waistband. He turned and began to run back to the motel office.

Officer Levy drew his identification, unholstered his gun and approached Mamoella. The officer confronted Mamoella in the lighted porch, about four feet from the door of the motel office. Levy ordered Mamoella to the ground and, with investigator Le Tourneau's assistance, searched Mamoella and recovered the gun Levy had seen Mamoella place in his waistband. The weapon was a fully loaded, semi-cocked, .32-caliber automatic pistol. As Levy and Le Tourneau started to pick Mamoella off the ground, Mamoella said to the officers, "No. No. Somebody's going to get killed," pointed in the direction of the defendant, who was running toward the restaurant, and said, "That's him." The defendant was about 15 to 25 feet from the officers at this time.

Levy pursued the defendant, overtook him, identified himself as a police officer and directed the defendant to a parked car, where he conducted a protective pat-down frisk, which disclosed a nine-millimeter automatic pistol in defendant's waistband.

At the conclusion of the testimony and argument, the trial court sustained the defendant's motion to suppress. From said order, the People bring this appeal.

The fourth amendment to the United States Constitution provides, inter alia, "The right of the people to be secure * * * against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *."

In *Weeks v. United States* (1914), 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341, the United States Supreme Court for the first time applied the "exclusionary rule" in holding the fourth amendment barred the use of evidence secured through an illegal search and seizure. Later, in *Mapp v. Ohio* (1961), 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, the court held under the fourteenth amendment to the United States Constitution the exclusionary rule is binding upon the State courts and illegally searched and seized evidence is inadmissible in State court prosecutions, just as it had been held inadmissible in Federal criminal trials.

The reasonableness of a warrantless search and seizure must be examined in light of the fourth amendment's provision that no warrants

shall issue, unless upon probable cause. The court has decided a warrantless arrest is proper when a fast-developing situation precludes resort to a magistrate (see *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975) and when probable cause exists to warrant a prudent man in believing a crime was being committed or has been committed, and such facts are available to the arresting officer (see *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329).

The objective requirement of probable cause to arrest was accepted as a general rule of the fourth amendment until it was discovered that circumstances frequently arise whereby police officers encounter suspicious persons and such officers need to protect themselves by stopping and frisking such persons. In its first direct encounter with the issues raised by the police on-the-street stop of suspicious person and the accompanying frisk for weapons, the Supreme Court, in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 889, 88 S. Ct. 1868, found constitutional authority for the practice of stop and frisk. Even though there was no probable cause, no formal arrest, and no warrant, the practice was not necessarily an unreasonable search and seizure, and the resulting evidence need not be excluded from trial. Chief Justice Warren's careful phrasing of the majority holding stated:

> " * * * [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken." *Terry v. Ohio* (1968), 392 U.S. 1, 30-31, 20 L. Ed. 889, 911, 88 S. Ct. 1868.

*Terry v. Ohio* introduced a new concept into the law of search and seizure. Previously, any forced detention of an individual by an officer was an arrest and would have to be justified by a showing of probable cause.

When *Terry v. Ohio* came before the Supreme Court, the opponents of stop-and-frisk urged the court to recognize only two categories of police-

citizen street encounters. Either a citizen was being restrained in his freedom to walk away or he was not. If he was being restrained, that was a fourth amendment seizure of his person and was lawful only upon probable cause. If he was not being restrained, there was no seizure, yet the officer would be permitted to talk to the citizen, upon any grounds or none at all, so long as the citizen wished to stop and listen (see Mr. Justice Douglas' dissent). The majority of the court, however, recognized the fourth amendment governs seizures amounting to something less than arrests.

The opinion of the court in *Terry v. Ohio* recognized three categories of street encounters: mere conversation, which an officer may commence without any particular cause; stops, which require reliable indicia of criminal activity not amounting to probable cause; and arrests, which require probable cause. By inclusion of the stop and frisk category the court recognized the right of an officer to protect himself and others, as a factor in determining the reasonableness of a seizure.

In the case at bar, before stopping the defendant and conducting a pat-down search for weapons, Officer Levy observed another man race through a parking lot, open the trunk to a car, retrieve a gun, place it in his waistband and begin to run back across the lot. After stopping this man, searching him and recovering a fully loaded, semi-cocked automatic, the man shouted, "No. No. Somebody's going to get killed," and a second or two later the man pointed to the defendant, who was running up a walk and said, "That's him." Levy pursued the defendant for about 10 seconds, overtook him, identified himself as a police officer and directed the defendant to a parked car, where in the course of a pat-down search he discovered a loaded and cocked, Smith and Wesson automatic pistol in the defendant's front waistband.

In light of Mamoella's behavior, Officer Levy was justified in believing criminal activity was afoot, and the defendant was involved in that activity in some fashion. Officer Levy was entitled to stop the defendant. This much was conceded by defendant's counsel during oral argument on appeal. Officer Levy was also entitled, for the protection of himself and others in the area, to conduct a carefully limited search of the outer clothing of the defendant in an attempt to discover weapons which might have been used against him. Officer Levy's pat-down search of the defendant's outer clothing was properly limited to the discovery of such weapons. The facts available to Officer Levy at the time of the search and seizure would warrant a man of reasonable caution in the belief the action taken was appropriate. Such a search is a reasonable search under the fourth amendment, and the automatic weapon seized should have been admitted into evidence against the defendant.

For the foregoing reasons the order of the circuit court of Cook County

quashing the defendant's arrest and suppressing evidence seized is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

JOHNSON and LINN, JJ., concurring.